# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v HARRIS

Docket No. 146212. Argued October 9, 2013 (Calendar No. 7). Decided April 3, 2014.

James Early Harris, Jr., was convicted by a jury in the Saginaw Circuit Court, James T. Borchard, J., of extortion; carrying a dangerous weapon with unlawful intent; assaulting, resisting, or obstructing a police officer; and three counts of carrying a firearm during the commission of a felony. Defendant had agreed to pay Willie Neal $400 to fix the transmission on defendant's truck. Neal began working on the truck in the driveway that defendant shared with a neighbor, but stopped when it began to rain. Upset by Neal's refusal to work in the rain, defendant went into his house and returned with a gun. Defendant told Neal that he would "silence him" unless Neal resumed working on the truck or returned a portion of defendant's down payment for the work. Neal refused, and defendant returned home. When police officers arrived, they found defendant in the driveway carrying a rifle. Defendant appealed. The Court of Appeals, JANSEN and RIORDAN, JJ. (O'CONNELL, P.J., concurring in part and dissenting in part), affirmed in an unpublished opinion per curiam, issued September 27, 2012 (Docket No. 304875). The Supreme Court granted defendant's application for leave to appeal. 493 Mich 948 (2013).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, MCCORMACK, and VIVIANO, the Supreme Court *held*:

Under the plain language of the extortion statute, MCL 750.213, extortion occurs when a defendant maliciously threatens to injure another person with the intent to compel that person to do any act against his or her will, without regard to the seriousness or significance of the compelled act, overruling *People v Fobb*, 145 Mich App 786 (1985), and *People v Hubbard (After Remand)*, 217 Mich App 459 (1996), to the extent that those decisions required that the act or omission compelled by the defendant be of serious consequence to the victim.

1. Under the plain language of the extortion statute, the crime of extortion is complete when a defendant (1) either orally or by a written or printed communication, maliciously threatens (2) to accuse another of any crime or offense, or to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, or with the intent to compel the person threatened to do or refrain from doing any act against his or her will. The Court of Appeals decisions in *Fobb* and *Hubbard*, which held that the act demanded of the victim must have been of serious consequence to the

victim in order to convict a defendant of extortion, are contrary to the plain language of the statute.

2. A statute may be challenged for vagueness on three grounds: (1) that it fails to provide fair notice of the conduct proscribed, (2) that it is so indefinite that it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) that its coverage is overbroad and impinges on First Amendment protections. In this case, the key question is whether the extortion statute provides adequate notice to citizens regarding what conduct is prohibited and sufficient guidance to fact-finders in order to avoid arbitrary enforcement. The Legislature's inclusion of a malice requirement in the extortion statute provides law enforcement, judges, and juries with an explicit standard for applying the statute. Only those threats made with the intent to commit a wrongful act without justification or excuse, or made in reckless disregard of the law or of a person's legal rights, rise to the level necessary to support an extortion conviction. The plain language of the statute provides the trier of fact with sufficient guidance regarding the nature of the threat required for a conviction of extortion and also provides a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may act accordingly.

3. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Defendant orally communicated a malicious threat to injure Neal, thereby satisfying the first two elements of statutory extortion, when he threatened to "silence" Neal while waving a gun. Defendant made the threat with the intent to compel Neal to undertake an act against his will, thereby satisfying the third element of statutory extortion.

Affirmed.

Justice CAVANAGH concurred in the result only.

©2014 State of Michigan

# Opinion

Chief Justice:     Justices:

Robert P. Young, Jr.     Michael F. Cavanagh
    Stephen J. Markman
    Mary Beth Kelly
    Brian K. Zahra
    Bridget M. McCormack
    David F. Viviano

FILED APRIL 3, 2014

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v          No. 146212

JAMES EARLY HARRIS, JR.,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In *People v Fobb*, the Court of Appeals held that an extortion conviction under the "against his will" prong of MCL 750.213 may only be maintained when the act defendant sought to compel entailed "serious consequences" to the victim.[1]  This case requires us to revisit the *Fobb* decision.  In the instant case, a jury convicted defendant of extortion after he maliciously threatened to injure a mechanic unless the mechanic resumed

---

[1] *People v Fobb*, 145 Mich App 786, 791-792; 378 NW2d 600 (1985).  See also *People v Hubbard (After Remand)*, 217 Mich App 459, 485; 552 NW2d 493 (1996), overruled on other grounds by *People v Bryant*, 491 Mich 575, 618; 822 NW2d 124 (2012).

working on defendant's truck in the rain. Defendant, relying on *Fobb*, maintains that he cannot be convicted of extortion because the act defendant sought to compel—the mechanic's continued work on the truck—was not of serious consequences to the mechanic. But the plain language of the extortion statute, MCL 750.213, defines extortion in terms of whether the defendant maliciously threatened a person with harm in order to "compel the person so threatened to do . . . *any* act against his will."[2] Thus, the Legislature clearly intended the crime of extortion to occur when a defendant maliciously threatens to injure another person with the intent to compel that person to do any act against his will, without regard to the significance or seriousness of the compelled act. Because the defendant's conduct satisfies the requirements set forth in MCL 750.213, we affirm his conviction of extortion. Furthermore, we overrule the Court of Appeals decisions in *People v Fobb* and *People v Hubbard* to the extent that those decisions require that the act or omission compelled by the defendant be of serious consequence to the victim.

## I. FACTS AND PROCEEDINGS

Defendant, James Early Harris, Jr., agreed to pay Willie Lee Neal $400 to fix the transmission on defendant's truck. Defendant paid $210 in advance, and agreed to tender the balance upon completion of the work. On the afternoon of September 11, 2010, Neal was working on the truck in the shared driveway between defendant's home and that of

---

[2] MCL 750.213 (emphasis added).

2

his neighbor, Robbin Smith. Smith had just returned home from work, and her mother and aunt were sitting on her front porch.

It began to rain, and Smith's mother invited Neal to sit on Smith's covered porch to get out of the rain. Smith went inside to prepare a sandwich for Neal. When she returned outside, defendant was on the porch talking to Neal. He was upset that Neal was not repairing the truck. Neal indicated that he would resume working once it stopped raining, but defendant continued to express his displeasure with Neal. Offended by defendant's vulgar language, Smith asked defendant to leave her porch.

Defendant went into his house and returned with a handgun. Waving the gun, defendant confronted Neal from the side of Smith's porch. Defendant told Neal that he would "silence him" unless Neal either immediately resumed working on the truck or returned $100 of the prepaid compensation. Neal did neither, but instead indicated that he would rather meet his maker than capitulate to defendant's demands. The incident upset the three women on the porch. Smith's mother was in tears. Smith perceived defendant's actions as a threat, and announced her intention to telephone the police.

Defendant went home. He was in the shared driveway carrying a rifle when the police arrived. Defendant was arrested and charged with felonious assault, carrying a dangerous weapon with unlawful intent, assaulting, resisting or obstructing a police officer, and three corresponding counts of carrying a firearm during the commission of a felony (felony-firearm). The felonious assault charge was amended to extortion at the request of the prosecution, and defendant was bound over to circuit court on all counts.

A jury found defendant guilty of all counts after a three-day trial. Defendant appealed by right in the Court of Appeals, which affirmed his convictions in a divided, unpublished opinion.[3]

The Court of Appeals majority concluded that there was sufficient evidence to support defendant's extortion conviction. For present purposes, the first two elements of extortion are (1) an oral threat (2) to harm another person. The Court of Appeals reasoned that, because defendant held a gun and threatened Neal that he would "silence him" if Neal did not comply with defendant's demands, the first two elements of extortion were satisfied.[4] The Court of Appeals rejected defendant's contention that there was insufficient evidence to satisfy the third element of extortion—that defendant's threat was intended to compel Neal to perform an act against Neal's will.[5] The Court of Appeals acknowledged that *People v Fobb* held that only "serious" acts could support a conviction under the "against his will" prong of the extortion statute, but observed that "nothing in the statutory language of MCL 750.213 requires the action to be serious in nature or have significant value."[6] The Court of Appeals concluded that defendant's threat was intended to compel Neal to perform an act against Neal's will and therefore the third element of MCL 750.213 was satisfied, even under the *Fobb* standard.[7]

---

[3] *People v Harris*, unpublished opinion per curiam of the Court of Appeals, issued September 27, 2012 (Docket No. 304875).

[4] *Id.* at 4-5. Specifically, the Court of Appeals held that defendant orally communicated a malicious threat of injury to Neal's person.

[5] *Id.*

[6] *Id.*, citing *Fobb*, 145 Mich App at 791.

[7] *Harris*, unpub op at 4-5.

4

Judge O'CONNELL dissented in part, asserting that "[e]stablished precedent required the prosecution to prove that defendant intended to compel Neal to do something that had serious consequences, against Neal's will."[8]  Because Neal had previously agreed to repair the truck for his own pecuniary benefit, Judge O'CONNELL reasoned that returning to work would not have been against Neal's will.[9]  In his view, neither returning to work nor returning $100 of the prepayment were of "serious consequence" to Neal as required by *Fobb*.[10]  Judge O'CONNELL concluded that although this Court might wish to clarify the elements of extortion and the holding in *Fobb*, the Court of Appeals panel was bound to follow precedent.[11]  Therefore, Judge O'CONNELL would have reversed defendant's extortion conviction.

This Court granted leave to appeal to determine what the prosecution must prove to convict a defendant of extortion and whether the evidence was sufficient to sustain defendant's conviction.[12]

## II.  STANDARD OF REVIEW

Whether the crime of extortion requires that the act compelled of the victim be one having "serious consequences" to the victim is a question of statutory interpretation,

---

[8] *Harris*, unpub op at 1 (O'CONNELL, J., concurring in part and dissenting in part), citing *Hubbard*, 217 Mich App 459.

[9] *Harris*, unpub op at 3 (O'CONNELL, J., concurring in part and dissenting in part).

[10] *Id*.

[11] *Id*.

[12] *People v Harris*, 493 Mich 948 (2013).

5

which is reviewed de novo.[13]  In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.[14]

### III.  ANALYSIS

### A.  INTERPRETING MCL 750.213

As always, the goal of statutory interpretation " 'is to ascertain and give effect to the intent of the Legislature.  The touchstone of legislative intent is the statute's language.  If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written.' "[15]

At common law, extortion was defined as "the unlawful taking by a public officer, under color of his office, of any money or thing of value that was not due to him, or more than was due, or before it was due."[16]  The origin of statutory extortion, however, is attributed at least in part to the English courts' refusal to expand the scope of common-law robbery:

> The English courts had held it to be robbery, where a defendant coerced payment of money or goods by a threat to accuse the victim of sodomy or to destroy a dwelling; however, they refused to extend robbery

---

[13] *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

[14] *People v Sherman-Huffman*, 466 Mich 39, 41; 642 NW2d 339 (2002).

[15] *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013), quoting *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

[16] *People v Krist*, 97 Mich App 669, 674; 296 NW2d 139 (1980), citing Hawkins, Pleas of the Crown (1787), p 418, and *Commonwealth v Bagley*, 24 Mass 279 (1828).

6

to threats of other accusations or of other harm to persons or property. Thus, they held it was robbery when the threat was to commit immediate violence, but not robbery where the threat was of violence in the future, or was of destruction of property, or of accusation of crime. This gap in coverage was filled in various ways by the statutory extortion offenses enacted in many jurisdictions.[17]

Michigan was among those jurisdictions that enacted an extortion statute early in its statehood.[18] The current version of the statute, MCL 750.213, provides:

> Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

The statute has remained largely unchanged since its enactment more than 150 years ago.[19]

---

[17] Saltzman, Michigan Criminal Law: Definitions of Offenses (2nd ed), § 6-9(d), p 518.

[18] See 1846 RS, ch 153, § 19.

[19] Michigan's earliest extortion statute, 1846 RS, ch 153, § 19, provided:

> If any person shall, either verbally or by any written or printed communication, maliciously threaten to accuse another of any crime or offence, or shall by any written or printed communication maliciously threaten any injury to the person or property of another, with intent thereby to extort money, or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will, he shall be punished by imprisonment in the state prison or in the county jail, not more than two years, or by fine not exceeding one thousand dollars.

The statute has undergone few amendments since its enactment. In 1897, "verbally" was replaced by "orally" with respect to malicious threats to accuse another of a crime, and "orally" was added with respect to "written or printed" malicious threats to injure persons

7

According to the plain language of the statute, the crime of extortion is complete when a defendant (1) either orally or by a written or printed communication, maliciously threatens (2) to accuse another of any crime or offense, *or* to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, *or* with the intent to compel the person threatened to do or refrain from doing any act against his or her will. In the instant case, the prosecution alleged that defendant maliciously threatened to injure Neal with the intent to compel Neal to do an act against his will.

Relying on *Fobb*, defendant maintains that the prosecution failed to prove that he intended to compel Neal to do "any act against his will." In *People v Fobb*, the defendant twice telephoned the victim, first complaining that the victim had been spreading lies about the defendant, and then again threatening to sue the victim for $21,000.[20] After the victim hung up the telephone on defendant the second time, the defendant broke through the victim's locked door and attacked the victim, first choking her and then beating her with a hairdryer.[21] During the attack, the defendant demanded that the victim draft and

---

or property. See 1897 PA 188. In 1925, "threaten injury to the person or property or property of another" was amended to include "or mother, father, husband, wife, or child of another." See 1925 PA 83, § 1. The extortion statute was most recently amended during the 1931 enactment of the Penal Code, which raised the maximum authorized fine to $10,000 and the maximum authorized imprisonment to 20 years. See 1931 PA 328, § 213. See also Saltzman, Michigan Criminal Law: Definitions of Offenses (2nd ed), § 6-9(d), pp 518-519.

[20] *Fobb*, 145 Mich App at 788.

[21] *Id*.

sign a note admitting that she had spread lies about the defendant.[22] The defendant was convicted of extortion and assault with intent to do great bodily harm less than murder.[23] The Court of Appeals reversed Fobb's extortion conviction.

Although acknowledging that the note was obtained against the victim's will, the *Fobb* panel held that the defendant's extortion conviction should be overturned because "the act required of the victim was minor with no serious consequences to the victim. The note the victim was forced to write was erratic, quixotic and was not used to the victim's detriment or defendant's advantage."[24] The *Fobb* panel reasoned that "[t]he Legislature did not intend punishment for every minor threat," and after discussing "an old Tennessee case," noted "that Michigan cases brought under the 'against his will' section of the extortion statutes have been for serious demands."[25] Despite the lack of any "seriousness" requirement in the plain language of the "against his will" prong of MCL 750.213, *Fobb* concluded "that the demand by the defendant that the victim execute a useless note was not an offense such as was contemplated by the extortion statute as no pecuniary advantage was obtained nor was the act demanded of such consequence or seriousness as to apply that statute."[26]

---

[22] *Id.*

[23] *Id.* at 787-788.

[24] *Id.* at 791.

[25] *Id.* at 791-792 (citations omitted).

[26] *Fobb*, 145 Mich App at 793.

In *People v Hubbard*, the defendant challenged his extortion conviction on the ground that MCL 750.213 is void for vagueness because "the statute allows a defendant to be convicted of extortion after making a minor threat that results in the victim engaging in an action with no serious consequences to the victim."[27] Relying on its decision in *Fobb*, the Court of Appeals reasoned that the Legislature did not intend to punish every minor threat, but only "those threats that result in pecuniary advantage to the individual making the threat or that result in the victim undertaking an action of serious consequence . . . ."[28] Therefore, the Court of Appeals concluded that the statute is not void for vagueness because "the construction afforded the statute by *Fobb* provides sufficient guidance regarding the nature of the threat and act compelled to ensure that the statute will not be enforced arbitrarily or discriminatorily."[29] Although *Fobb* was decided before 1990 and was therefore not binding on subsequent panels of the Court of Appeals, the reaffirmation of *Fobb* by *Hubbard* in 1996 rendered it binding on subsequent panels.[30]

The Court of Appeals holding in *Fobb* is contrary to the plain language of MCL 750.213. The statute contains no requirement whatsoever that the act demanded must be of serious consequence to the victim in order to convict a defendant. The "against his will" prong of MCL 750.213 is satisfied when a malicious threat is communicated "with

---

[27] *Hubbard*, 217 Mich App at 485.

[28] *Id*. at 485-486, citing *Fobb*, 145 Mich App at 792-793.

[29] *Harris*, 217 Mich App at 486.

[30] See MCR 7.215(J)(1).

10

intent to compel the person so threatened to do or refrain from doing *any* act against his will."[31] "Any" is defined as:

> **1.** one, a, an, or some; one or more without specification or identification. **2.** whatever or whichever it may be. **3.** in whatever quantity or number, great or small; some. **4.** every; all . . . .[32]

Because "any" is commonly understood to encompass a wide range of things, we conclude that the Legislature intended that MCL 750.213 is satisfied without regard to whether the act required of the victim had "serious consequences."[33]  Indeed, it is difficult to imagine how the Legislature could have cast a broader net given the use of the words "any act" in MCL 750.213.  Consequently, the Court of Appeals decision in *Fobb*

---

[31] MCL 750.213 (emphasis added).

[32] *Random House Webster's College Dictionary* (1997).  The definition of "any" has undergone little change in the more than 150 years since the enactment of the extortion statute.  When the statute was enacted in 1846, "any" was defined as:

> 1.  One, indefinitely.  2.  Some; an indefinite number, plurally.  3. Some; an indefinite quantity; a small portion.  4.  It is often used as a substitute, the person or thing being understood.  It is used in opposition to *none*.  [*Webster's American Dictionary of the English Language* (1846).]

When the statute was most recently amended in 1931, "any" was defined as:

> 1.  adj.  (With neg., interrog., if, &c.) one, some, (*not having [any] time to spare; have we [any] screws?*; *if you can find [any] excuse; to avoid [any] delay*); one or some taken at random, whichever you will, every, (*can get it from [any] chemist; in [any] case; gives [any] amount of trouble*, an infinite).  [American Oxford Dictionary (1931).]

[33] See also *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004) ("The commonly understood word 'any' generally casts a wide net and encompasses a wide range of things.")

11

requiring that the act demanded be of serious consequence to the victim improperly narrowed the scope of MCL 750.213, and we overrule that aspect of the decision.

Relying on this Court's decision in *People v Tombs*, defendant urges this Court to maintain the *Hubbard* panel's adoption of *Fobb*'s construction of the extortion statute. In *Tombs*, the defendant challenged his conviction of distributing or promoting child sexually abusive material under MCL 750.145c(3).[34] This Court addressed the question of whether MCL 750.145c(3) requires that the distribution or promotion of child sexually abusive material be performed with criminal intent. We concluded that despite the absence of an explicit criminal intent requirement in the statutory language, the Legislature's use of active verbs "supports the presumption that the Legislature intended that the prosecution prove that an accused performed the prohibited act with criminal intent."[35] Citing the United States Supreme Court decision in *United States v X-Citement*

---

[34] *People v Tombs*, 472 Mich 446; 697 NW2d 494 (2005). MCL 750.145c(3) reads in relevant part:

> A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. This subsection does not apply to the persons described in section 7 of 1984 PA 343, MCL 752.367.

[35] *Id*. at 457.

12

*Video, Inc*, the Court reasoned that "if there were no *mens rea* element respecting the distribution of the material, the statute could punish otherwise innocent conduct."[36] Accordingly, the Court inferred a criminal intent requirement in the statute.

Just as the Court inferred a criminal intent element in the statute in *Tombs*, the defendant in the instant case urges the Court to retain *Fobb*'s "serious consequences" construction of MCL 750.213—as the Court of Appeals did in *Hubbard*—for the purpose of limiting the scope of the extortion statute. The comparison of the statutory analysis in *Tombs* to that of instant case is inapposite. Because the language of MCL 750.145c(3) lacked a *mens rea* requirement, the *Tombs* Court saved the statute by inferring a criminal intent requirement in the statute. Unlike MCL 750.145c(3), the plain language of the extortion statute passes constitutional muster without any judicial construction.

A statute may be challenged for vagueness on three grounds: (1) that it fails to provide fair notice of the conduct proscribed; (2) that it is so indefinite that it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; or (3) that its coverage is overbroad and impinges on First Amendment protections.[37] The party challenging the constitutionality of a statute bears the burden of proving that the law is unconstitutional.[38] This Court is responsible for upholding both

---

[36] *Id*. at 458, citing *United States v X-Citement Video, Inc*, 513 US 64, 69; 115 S Ct 464; 130 L Ed 2d 372 (1994).

[37] *Woll v Attorney General*, 409 Mich 500, 533; 297 NW2d 578 (1980); *People v Howell*, 396 Mich 16, 20; 238 NW2d 148 (1976).

[38] *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007).

the Michigan and federal constitutions, and our authority to invalidate laws is limited and must be predicated on a clearly apparent demonstration of unconstitutionality. Moreover, laws are presumed constitutional, and this Court must construe a statute as constitutional unless its unconstitutionality is clearly apparent.[39] Because neither *Hubbard* nor the instant case implicates First Amendment freedoms, the constitutionality of the extortion statute must be examined in light of the particular facts at hand.[40]

The pertinent inquiry is whether the extortion statute gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, and also whether the statute provides an explicit standard for those who apply it.[41] In *Kolender v Lawson*, the United States Supreme Court reasoned that

> [a]lthough the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement." [*Smith v Goguen*, 415 US 566, 574; 94 S Ct 1242; 39 L Ed 2d 605 (1974)]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a

---

[39] *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich 295, 307; 806 NW2d 683 (2011); *People v Barton*, 253 Mich App 601, 603; 659 NW2d 654 (2002) (applying a presumption of constitutionality to an ordinance challenged on vagueness grounds).

[40] See *Howell*, 396 Mich at 21, citing *United States v Nat'l Dairy Prod Corp*, 372 US 29; 83 S Ct 594; 9 L Ed 2d 561 (1963); *People v Lynch*, 410 Mich 343, 352; 301 NW2d 796 (1981).

[41] *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). See also *People v Lino*, 447 Mich 567, 575; 527 NW2d 434 (1994), quoting *Kolender v Lawson*, 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983).

standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections. *Id.*, at 575."[42]

Thus, the key question is whether the extortion statute provides adequate notice to citizens regarding what conduct is prohibited and sufficient guidance to fact-finders in order to avoid arbitrary enforcement.

*Hubbard* correctly concluded that the Legislature did not intend to punish every minor threat, but it need not have relied on the judicially crafted "serious consequences" construction of the extortion statute to arrive at its conclusion. The *Hubbard* panel relied on *Fobb*'s "serious consequences" construction to conclude that the statute provides the fact-finder with sufficient guidance so as not to encourage arbitrary and discriminatory enforcement. But the plain language of the extortion statute itself clearly provides that the Legislature intended punishment for those who "*maliciously* threaten" others.[43] In other words, the Legislature's inclusion of a malice requirement provides law enforcement, judges, and juries with an explicit standard for applying MCL 750.213. Malice is defined as

---

[42] *Kolender*, 461 US at 357-358. The *Kolender* Court noted that its concern for minimal guidelines dates as far back as its decision in *United States v Reese*, 92 US 214, 221; 23 L Ed 563 (1875). *Reese* held:

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government. [*Id.* at 221.]

[43] MCL 750.213 (emphasis added).

**1.** The intent, without justification or excuse, to commit a wrongful act. **2.** Reckless disregard of the law or of a person's legal rights. **3.** Ill will; wickedness of heart. This sense is most typical in nonlegal contexts.[44]

Therefore, only those threats made with the intent to commit a wrongful act without justification or excuse, or made in reckless disregard of the law or of a person's legal rights, rise to the level necessary to support an extortion conviction.

Defendant's vagueness challenge in *Hubbard* was premised on the theory that MCL 750.213 conferred unlimited discretion on the trier of fact to determine whether extortion had been committed. Thus, the panel did not address whether the statute provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he or she may act accordingly. With regard to whether a person of ordinary intelligence is afforded a reasonable opportunity to know what is prohibited by the extortion statute, the Court of Appeals opinion in *People v Boomer* is insightful.[45] In *Boomer*, the Court of Appeals addressed the constitutionality of MCL 750.337, which provides:

> Any person who shall use any indecent, immoral, obscene, vulgar or insulting language in the presence or hearing of any woman or child shall be guilty of a misdemeanor.

Given the lack of any restrictive language to limit or guide a prosecution for "indecent, immoral, obscene, vulgar or insulting language," the Court of Appeals concluded that

---

[44] *Black's Law Dictionary* (9th ed), p 1042. See also *People v Whittemore*, 102 Mich 519, 526; 61 NW 13 (1894). "The malice required by the [extortion] statute was . . . the willful doing of the act with the illegal intent. If the threat was willfully made with the intent to extort money, it was a malicious act . . . ." *Id.*, quoting *Com v Buckley*, 148 Mass 27, 28; 18 NE 577 (1888).

[45] *People v Boomer*, 250 Mich App 534; 655 NW2d 255 (2002).

"[a]llowing a prosecution where one utters 'insulting' language could possibly subject a vast percentage of the populace to a misdemeanor conviction."[46]  Because the statute failed to provide fair notice of the scope of conduct it prohibited, and also because it encouraged arbitrary and discriminatory enforcement, the Court of Appeals held that the statute was facially vague.[47]  Central to its analysis, the panel reasoned that the statute's failure to provide fair notice of the conduct proscribed was due at least in part to the subjective nature of the statutory language.  The Court of Appeals noted that even inferring a reasonable person standard

> would require every person who speaks audibly where children are present to guess what a law enforcement officer might consider too indecent, immoral, or vulgar for a child's ears.  Children aside, it is far from obvious what the reasonable adult considers to be indecent, immoral, vulgar, or insulting.  As a result, a judicially imposed "reasonable person" limitation would not, in our opinion, cure the vagueness of the statute.[48]

In light of the reasoning in *Boomer*, the *Hubbard* panel's adoption of *Fobb*'s "serious consequences" construction actually exposes the extortion statute to a vagueness claim premised on the lack of notice of the prohibited conduct.  Indeed, how would a putative defendant in a statutory extortion context know with any degree of certainty whether the act he or she intends to compel is of serious consequence to the victim?  Just as in *Boomer*, it may be far from obvious what a reasonable adult considers to be "serious" in consequence.

---

[46] *Id*. at 540.

[47] *Id*.

[48] *Id*. at 541.

17

Nonetheless, any claim that MCL 750.213 fails to provide fair notice of the conduct proscribed is meritless. A statute is not vague if the meaning of the words in controversy can be fairly ascertained by referring to their generally accepted meaning.[49] Because the word "any" is commonly understood to encompass a wide range of things,[50] and the word "malicious" is commonly understood to involve either the intent to commit a wrongful act, absent justification or excuse, or an act or omission in reckless disregard of the law or of a person's legal rights,[51] any contention that the defendant did not have sufficient notice that his conduct would fall within the scope of the extortion statute is meritless. Moreover, the Legislature's inclusion of a scienter requirement—in this case the requirement that the defendant "maliciously" threaten another—may mitigate a statute's vagueness, "especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."[52]

---

[49] See *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 516; 821 NW2d 117 (2012) (reasoning that courts may consult dictionary definitions to ascertain the common and ordinary meaning of words in a statute); *People v Cavaiani*, 172 Mich App 706, 714; 432 NW2d 409 (1988) ("[A] statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning.").

[50] See the text accompanying notes 32-33 of this opinion.

[51] See the text accompanying note 44 of this opinion.

[52] *Village of Hoffman Estates v Flipside, Hoffman Estates, Inc*, 455 US 489, 499; 102 S Ct 1186; 71 L Ed 2d 362 (1982). The scienter requirement limiting the statute's scope to threats made in reckless disregard of the law or another's legal rights prohibits the application of the extortion statute to the far-fetched scenarios the defendant is concerned about, such as a judge compelling their law clerk to complete a work-related task under threat of termination or docked pay. Although the prosecution mistakenly suggested during oral argument that reasonable prosecutorial discretion would guard against

18

The plain language of MCL 750.213 provides the trier of fact with sufficient guidance regarding the nature of the threat required for a conviction of statutory extortion and also provides a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may act accordingly. Therefore, the Court of Appeals decision in *Hubbard* erred by relying on the "serious consequences" construction afforded the statute in *Fobb*. Accordingly, we overrule that aspect of those decisions.[53]

## B. APPLICATION

Having overruled *Fobb* and *Hubbard*, and looking exclusively to the text of the extortion statute, we conclude that there was sufficient evidence in the record to support defendant's extortion conviction. The existence of malice, as set forth in this opinion, depends on the facts and circumstances of each case and can be inferred from a defendant's conduct. In this case, the record shows that defendant was upset and used vulgar language when, while armed with a handgun, he threatened to "silence" Neal. Defendant's threat to "silence" Neal, while waving a gun, unless Neal resumed repairing the truck in the rain, was certainly a wrongful act, and it was not justified.[54] Therefore,

application of the statute in such cases, the Supreme Court of the United States has made clear that the good will of prosecutors cannot *alone* save a vague statute. *Baggett v Bullitt*, 377 US 360, 373; 84 S Ct 1316; 12 L Ed 2d 377 (1964) ("Well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law.")

[53] In *People v Bryant*, this Court overruled *Hubbard* on other grounds, specifically in the context of a Sixth Amendment claim addressing whether the defendant's jury venire reflected a fair cross section of the community. See *Bryant*, 491 Mich 575.

[54] See footnote 55, *infra*.

19

the threat was sufficiently malicious. Neal expressed a willingness to face God rather than capitulate to the defendant's demands. Defendant orally communicated a malicious threat to injure Neal, thereby satisfying the first two elements of statutory extortion.

Moreover, the evidence is sufficient to satisfy the third element—that defendant made the threat with the intent to compel Neal to undertake an act against his will. Although Neal initially agreed to work on the truck, the record establishes that he did not want to work on the truck in the rain, when defendant demanded otherwise. Whether a victim was in breach of a contract is immaterial under the extortion statute.[55] Therefore, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

## IV. CONCLUSION

Because the plain language of MCL 750.213 requires that a defendant maliciously threaten harm to another with the intent to compel that person "to do or refrain from doing any act against his will," the level of significance or seriousness of the consequences of the compelled act to the victim is immaterial. We overrule the Court of

---

[55] Even if defendant's demands were within the scope of his agreement with Neal, which they were not, the proper means of enforcing a contract is through the courts, not by engaging in malicious behavior. See *People v Maranian*, 359 Mich 361; 102 NW2d 568 (1960) (a claim of right is not a defense to an extortion charge).

Appeals decisions in *People v Fobb* and *People v Hubbard* to the extent that they require that the intended compelled act or omission be of serious consequence to the victim, and we affirm the judgment of the Court of Appeals in the instant case.

> Brian K. Zahra
> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly
> Bridget M. McCormack
> David F. Viviano

CAVANAGH, J., concurred in the result only.

21