*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL JOSEPH KVASNICKA,

Defendant-Appellant.

FOR PUBLICATION
February 13, 2025
2:05 PM

No. 371542
Wayne Circuit Court
LC No. 24-001354-01-FH

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

M. J. KELLY, J.

In this interlocutory appeal, defendant, Michael Kvasnicka, appeals by leave granted the trial court order denying his motion to dismiss the charges against him. Kvasnicka was charged with making a threat of terrorism, MCL 750.543m, and using a computer to commit a crime, MCL 752.796. The charges stem from a message he sent to a young girl via social media stating that she was "not gonna be laughing once I come to your school and shoot it up or blow it up like [C]olumbine." On appeal, Kvasnicka argues that MCL 750.543m is facially unconstitutional because, contrary to the United States Supreme Court's recent opinion in *Counterman v Colorado*, 600 US 66; 143 S Ct 2106; 216 L Ed 2d 775 (2023), MCL 750.543m does not require proof that the defendant had some subjective understanding of the threatening nature of his statements and, in particular, that he acted "recklessly" when making the statements. For the reasons stated in this opinion, we conclude that MCL 750.543m is facially unconstitutional. Accordingly, we reverse the trial court order and remand for entry of an order dismissing the charges against Kvasnicka.

## II. CONSTITUTIONALITY OF MCL 750.543m

### A. STANDARD OF REVIEW

Questions involving the constitutionality of a statute are reviewed de novo. *People v McKinley*, 496 Mich 410, 415; 852 NW2d 770 (2014). "[L]aws are presumed constitutional, and this Court must construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Harris*, 495 Mich 120, 134; 845 NW2d 477 (2014). "A party challenging the facial constitutionality of a statute faces an extremely rigorous standard, and must show that no set of circumstances exists under which the act would be valid." *In re Request for Advisory Opinion*

-1-

*Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007) (quotation marks, citations, and alteration omitted). Questions of statutory interpretation are reviewed de novo. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

## B. ANALYSIS

Both the United States Constitution and the Michigan Constitution prohibit the government from making laws that abridge the freedom of speech. *People v Burkman*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164638 and 164639); slip op at 21, citing US Const Am I and Const 1963, art 1, § 5. However, "[t]rue threats of violence are outside the bounds of First Amendment protection and [are] punishable as crimes." *Counterman*, 600 US at 69. " 'True threats' encompass those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v Black*, 538 US 343, 359; 123 S Ct 1536; 155 L Ed 2d 535 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id*. at 359-360 (quotation marks, alterations, and citation omitted). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Counterman*, 600 US at 74, citing *Watts v United States*, 394 US 705, 708; 89 S Ct 1399; 22 L Ed 2d 664 (1969). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat[.]" *Counterman*, 600 US at 74, citing *Elonis v United States*, 575 US 723, 733; 135 S Ct 2001; 192 L Ed 2d 1 (2015). "The existence of a threat depends not on the mental state of the author but on what the statement conveys to the person on the other end." *Id*. (quotation marks and citation omitted). Because a statement can qualify as a true threat "solely on its objective content," the United States Supreme Court recently considered "whether the First Amendment nonetheless demands that the State in a true-threats case prove that the defendant was aware in some way of the threatening nature of his communications." *Counterman*, 600 US at 72.

The defendant in *Counterman* was charged and convicted of stalking and harassment based upon hundreds of messages sent via social media over a two-year period to a local musician. *Id*. at 70. The messages included statements indicating that the defendant was surveilling the musician and statements expressing anger and indicating that the defendant wished that harm would come to her. *Id*. The statements caused the musician to live in fear and she eventually reported the messages to the police. *Id*. The trial court instructed the jury that, when considering the defendant's statements, it need only conclude that they would have been viewed as threatening by a reasonable person, i.e., under an objective standard. *Id*. at 71. The defendant appealed, arguing that the First Amendment required that the prosecution show that he "was aware of the threatening nature of his statements." *Id*. The Colorado Court of Appeals disagreed, holding that the prosecution did not need to show a speaker's subjective intent to threaten and that it was appropriate to use an objective standard. *Id*. at 72.

In *Counterman*, the United States Supreme Court determined that a subjective mental-state was constitutionally required in order to avoid chilling constitutionally protected speech. *Id*. at 75.

The Court reasoned that a recklessness *mens rea* was the subjective standard required by the First Amendment. *Id*. at 78. It explained:

> A person acts recklessly, in the most common formulation, when he "consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another." *Voisine v United States*, 579 US 686, 691; 136 S Ct 2272; 195 L Ed 2d 736 (2016) (internal quotation marks omitted). That standard involves insufficient concern with risk, rather than awareness of impending harm. See *Borden v United States*, 593 US ___, ___; 141 S Ct 1817, 1823–1824; 210 L Ed 2d 63 (2021) (plurality opinion). But still, recklessness is morally culpable conduct, involving a "deliberate decision to endanger another." *Voisine*, 579 US at 694. In the threats context, it means that a speaker is aware "that others could regard his statements as" threatening violence and "delivers them anyway." *Elonis*, 575 US at 746 (Alito, J., concurring in part and dissenting in part). [*Counterman*, 600 US at 79.]

Accordingly, the court held that, in a true-threats case, "[t]he State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69.

On appeal, Kvasnicka argues that MCL 750.543m is facially unconstitutional because it does not require the prosecution to prove that he acted recklessly—i.e. that he disregarded a substantial risk that his communication would be viewed as threatening violence—when he sent a social media message suggesting that he would "shoot up" a school. We agree.

When construing a statute, the goal is "to ascertain and give effect to the intent of the Legislature." *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). "The touchstone of legislative intent is the statute's language." *Gardner*, 482 Mich at 50. "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *Id*. (quotation marks and citation omitted).

MCL 750.543m provides:

> A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
>
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.
>
> (b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.

In turn "act of terrorism" is defined as:

> (a) "Act of terrorism" means a willful and deliberate act that is all of the following:

(*i*) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(*ii*) An act that the person knows or has reason to know is dangerous to human life.

(*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion. [MCL 750.543b.]

This Court has previously interpreted MCL 750.543m as constitutional because it only applies to true threats. *People v Osantowski*, 274 Mich App 593; 736 NW2d 289 (2007), rev'd in part on other grounds 481 Mich 103 (2008) and *People v Byczek*, 337 Mich App 173; 976 NW2d 7 (2021). The *Byczek* Court explained:

> [T]o demonstrate that a defendant is guilty of making a terrorist threat under MCL 750.543m(1), the prosecution must prove that the defendant (1) threatened to commit an act of terrorism and (2) communicated the threat to another person. MCL 750.543m(1)(a). An act of terrorism is a willful and deliberate act that (1) would be a violent felony under the laws of this state, (2) is an act that the defendant knows or has reason to know is dangerous to human life, and (3) is an act that is intended to intimidate or coerce a civilian population or to influence or affect the conduct of government or a unit of government through intimidation or coercion. MCL 750.543b(a). The prosecution is not required to prove that the defendant had the intent or the capability to actually carry out the threatened act of terrorism, MCL 750.543m(2), but *the prosecution must prove the defendant's general intent to communicate a true threat*; that is, the "communication of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," made with "an intent to 'intimidate or coerce.' " *Osantowski*, 274 Mich App at 603. [*Byczek*, 337 Mich App at 185-186 (footnote omitted).]

Both *Osantowski* and *Byczek*, however, are silent as to whether the defendant's general intent to communicate a true threat must be judged by an objective standard or by a subjective standard. Accordingly, they do not resolve the issue present in this appeal, which is whether the plain language of MCL 750.543m requires the prosecution to prove, at a minimum, that the defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 US at 69.

On appeal, the prosecution turns to the dictionary definition of "threat," noting that multiple dictionaries indicate that a threat is an expression of intent to inflict harm. It then directs this Court to M Crim JI 38.4(3), arguing that it requires the jury to find that the defendant made a true threat and that a subjective-intent element is included in the definition of such a threat. M Crim JI 38.4(3) provides that the defendant's threat of an act of terrorism

> does not have to be stated in any particular terms but must express a warning of danger or harm. Further, it must have been a true threat, and not have been something like idle talk, or a statement made in jest, or a political comment. *It must*

-4-

*have been made under circumstances where a reasonable person would think that others may take the threat seriously as expressing an intent to inflict harm or damage.* [M Crim JI 38.43(3) (emphasis added).]

The prosecution contends that this instruction requires more than a reckless state of mind because it requires the jury to find the defendant understood that the language he used would reasonably cause others to believe that he was expressing an intent to inflict harm or damage. The prosecution is incorrect. Although the last sentence asks the jury to consider how the threat is perceived by "others," its reference to a reasonable person makes clear that the jury is tasked with deciding what a reasonable person in the defendant's shoes would have thought, not necessarily what the defendant would have thought himself. This language is not aligned with the *Counterman* standard, which requires the prosecution to show a defendant's subjective intent, by at least a standard of recklessness. *Counterman*, 600 US at 72-79.

Moreover, we are perplexed by the prosecution's decision to defend the constitutionality of MCL 750.543m by relying upon the jury instructions rather than the language used in the statute. When considering whether a statute is or is not constitutional, it is the words of the statute that must be examined, not the model jury instructions. *Osantowski*, 274 Mich App at 601 ("To determine whether a statute is unconstitutional, the entire text of the statute should be examined and the words of the statute should be given their ordinary meanings.") (quotation marks and citation omitted). We reject as unpersuasive the prosecution's reliance on the jury instructions and turn instead, as we must, to the statutory language.

Again, MCL 750.543m provides that "[a] person is guilty of making a terrorist threat . . . if the person . . . [t]hreatens to commit an act of terrorism and communicates the threat to any other person." Notably, the statute does not provide that the defendant has to purposefully, knowingly, or recklessly threaten to communicate an act of terrorism to another person. Rather, it is silent as to what state-of-mind the defendant must have when he "threatens to commit an act of terrorism." Instead, it is the "act of terrorism" definition that includes a specific intent requirement. MCL 750.543b provides that the phrase "act of terrorism" requires that *the act* be one that "the person knows or has reason to know is dangerous to human life" and that *the act* be one that "is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion." Although consideration of MCL 750.543m and the definition of "act of terrorism" shows the Legislature's intent to only prohibit true threats, *Osantowski*, 274 Mich App at 602-603, the statute does not require the prosecution to prove that the defendant made the threat recklessly, i.e., that he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 US at 69.

In summary, because there is no statutory language suggesting that the prosecutor must prove that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence, we conclude that MCL 750.543m(1)(a)(*i*) is facially unconstitutional. Accordingly, we reverse the court's order denying the motion to dismiss the charges against Kvasnicka and remand for entry of an order dismissing the charges.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Allie Greenleaf Maldonado