*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENNETH WILLIE FAITHFUL,

        Defendant-Appellant.

UNPUBLISHED
April 10, 2025
2:52 PM

No. 369190
Wayne Circuit Court
LC No. 19-006633-01-FH

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] his jury-trial conviction of gambling activities-felony violation (gambling activities), MCL 432.218(2). Defendant was sentenced to 18 months' probation. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of overpayments and casino-rule violations, which occurred while defendant was at Greektown Casino playing blackjack at codefendant Roderick Brown's table.[2] To play the game, a blackjack dealer deals out the playing cards that are located in a holder called a "shoe," in a clockwise order, and without looking at the cards being dealt. A player is supposed to tap the table if they want to be dealt another card, and wave their hand if they do not want another card. A player wins a hand of blackjack if the total value of their cards is 21, or at least greater than the dealer's cards, without going over 21.

On April 27, 2017, after security received a complaint about Brown, the dealer, an investigation was conducted which included review of video-recorded surveillance over the course

---

[1] *People v Faithful*, unpublished order of the Court of Appeals, entered May 3, 2024 (Docket No. 369190).

[2] In 2019, Brown pleaded guilty to one count of gambling activities and was sentenced to one year of probation.

of a two-week period. Surveillance from April 15, 2017 revealed suspicious activity occurring between Brown and defendant, including that defendant was repeatedly overpaid while playing at Brown's blackjack table. On April 28, 2017, live surveillance was conducted while defendant, once again, was playing blackjack at Brown's table. Subsequently, both defendant and Brown were arrested by police for cheating and were removed from the casino.

At defendant's trial, the jury heard testimony from the casino's security personnel, and was shown surveillance video which recorded a number of incidents that security personnel deemed suspicious involving defendant on April 15, 2017 and April 28, 2017. Demetrius Bankston, who worked in the casino's surveillance room, testified about the video footage he reviewed from April 15, 2017. Bankston testified about several instances of what he considered to be cheating including, for example: (1) when defendant's cards totaled 16 and he signaled for a card but, after Brown looked at the card he pulled from the shoe, Brown gave the card to the next player, which turned out to be a 7, so defendant would have lost; (2) when another player's cards totaled 21, Brown failed to take defendant's wager despite the fact that defendant lost; (3) when Brown's dealer cards totaled 21, and defendant's cards totaled 18, Brown failed to take defendant's wager; (4) when both Brown's and defendant's cards totaled the same amount, defendant was paid anyway as if he had won; and (5) when defendant "doubled down," meaning he doubled his wager, but could only receive one more card, his cards only totaled 15 while Brown's totaled 17, yet Brown paid defendant as though he had won. Bankston testified that his review revealed "a lot of procedural violations" as far as dealing and improperly paying, and that defendant was the primary beneficiary of these violations.

Bankston testified that his review of the April 15, 2017 surveillance recording led to a live observation of Brown and defendant on April 28, 2017, which was also recorded. Bankston testified about several instances of what he considered to be cheating including, for example: (1) when defendant waved off so as not to get another card but, after Brown looked at the next card, he gave it to defendant so that defendant won when he otherwise would have lost; (2) when Brown paid defendant on two hands although Brown's cards had a higher total value than defendant's cards, meaning defendant should have lost but he got paid as if he had won; (3) when defendant wagered $110 on one hand and was overpaid by at least $25 on his win; and (4) when defendant's cards totaled 10 and he "doubled down" on his wager, but ended up with a total of 17 while the dealer had 19, and defendant nevertheless took defendant's wager back, i.e., it was not collected by Brown. Bankston testified that there was a total of 13 procedural violations as far as dealing and improperly paying, involving Brown and defendant on April 28, 2017. He also noted that when Brown was relieved by another dealer for his break, defendant only stayed to play a few hands with the new dealer and then left. But defendant returned to the blackjack table after Brown returned to the blackjack table. Ultimately, defendant was arrested.

Defendant was charged with two counts of gambling activities, specifically alleging defendant "did cheat at a gambling game; contrary to MCL 432.218(2)." Defendant was also charged with two counts of conspiracy to commit gambling activities under MCL 750.157a. The trial court instructed the jury it had to find "[d]efendant cheated at a gambling game" to convict him for gambling activities. It then gave the definition of "cheat[ing]" found in MCL 432.202(k): "Cheat means to alter the selection of criteria that determine the result of a gambling game or the amount or frequency of payment in a gambling game . . . ." The jury convicted defendant of one count of gambling activities, but acquitted him of conspiracy to commit gambling activities.

Defendant was sentenced to 18 months' probation. Defendant applied for delayed leave to appeal, which this Court granted. *People v Faithful*, unpublished order of the Court of Appeals, entered May 3, 2024 (Docket No. 369190).

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues the evidence was insufficient for a rational jury to find defendant cheated at blackjack, since only Brown took steps to alter the results of the blackjack game or the frequency of payment. We disagree.

## A. STANDARD OF REVIEW

This Court reviews defendant's challenge to the sufficiency of the evidence de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). "[T]his Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This deferential standard requires the reviewing court to make all reasonable inferences and credibility determinations in favor of sustaining the conviction. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted).

## B. ANALYSIS

There was sufficient evidence defendant altered the result of a blackjack game for a rational jury to find him guilty of illegal gambling activities.

MCL 432.218(2) states: "A person commits a felony punishable by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both, . . . if the person does any of the following," including claim, collect, or take money of greater value than the amount won, MCL 432.218(2)(j), or cheat at a gambling game, MCL 432.218(2)(f). To cheat means "to alter the selection of criteria that determine the result of a gambling game or the amount or frequency of payment in a gambling game . . . ." MCL 432.202(k). Blackjack is a "gambling game." MCL 432.202(v).

As an initial matter, the trial court instructed the jury on MCL 432.218(2)(f), i.e., that it had to find that defendant cheated at a gambling game to convict him for gambling activities, and not MCL 432.218(2)(j), "tak[ing] an amount of money . . . of greater value than the amount won." At trial, the prosecution asserted defendant was charged under subsection (2)(j). However, neither party objected to the trial court only instructing the jury on subsection (2)(f). As such, we analyze the sufficiency of the evidence to sustain defendant's conviction under subsection (2)(f).

Defendant argues the evidence was insufficient for a rational jury to find that he cheated at blackjack. This argument lacks merit. The evidence showed, at minimum, that defendant altered the results of the game by keeping a double-down wager, which he should have lost (and did, in fact, lose). The April 28, 2017 surveillance video showed defendant making a "double-down" wager, meaning defendant could only receive one card and could not rescind his wager. Defendant took back his chips after he received a card, which would have lost him the hand. Viewing the evidence "in the light most favorable to the prosecution," *Harris*, 495 Mich at 126, this act

demonstrates defendant cheated under the statutory definition. Contrary to the blackjack rules in effect, defendant "alter[ed] the selection of criteria that determine the result of a gambling game" by taking back his double-down bet. MCL 432.202(k). Specifically, defendant engaged in an affirmative act, which violated the criteria to determine the result of the hand. Defendant acted by taking back his wager, violating the rules of blackjack, which did not allow him to "push" a losing hand, i.e., the rules did not allow him to keep his money when he lost the hand.[3] This evidence was sufficient for a rational jury to find defendant cheated at the casino game and sustain his conviction.

 Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman

---

[3] A "push" occurs when the hand results in the dealer and player having hands with equal values. After a push, a player can remove their wager or leave the wager in place for the next hand.