# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
June 16, 2016

v

DOUGLAS VERO SEDENQUIST,

Defendant-Appellant.

No. 324105
Delta Circuit Court
LC No. 14-008921-FH

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

A jury convicted defendant of one count of extortion, MCL 750.213, and one count of using a computer to commit a crime, MCL 752.796, and acquitted him of aggravated stalking, MCL 750.411i. The trial court sentenced defendant to concurrent terms of 3 to 20 years' imprisonment, with credit for 10 days. Defendant appeals as of right. We affirm and remand.

## I. FACTS

Defendant's convictions arise from his threat to accuse Carmen LaBute, his ex-wife and a registered nurse, of violating the federal Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.*, if she did not agree to certain changes in the couple's judgment of divorce (JOD).

LaBute filed for divorce in July 2012. During the pendency of the divorce, defendant lived at an isolated camp that the couple owned in Alger County and received $1,100 per month in spousal maintenance. According to defendant, he suffered from depression and seasonal affective disorder and contemplated suicide. In December 2012, defendant stopped communicating with his divorce attorney and she successfully petitioned to withdraw as his counsel approximately 10 days before the March 6, 2013 final divorce hearing. Three days before the final divorce hearing, defendant drove to Green Bay, Wisconsin, where LaBute worked as a weekend nurse for Aurora Bay Care, in the hope of convincing her to call off the divorce and intending to commit suicide if she did not. For reasons that are unclear from the record, defendant engaged in a standoff with police that resulted in defendant's confinement to a psychiatric hospital in Green Bay and his arrest while in the hospital.

-1-

Meanwhile, the final hearing in the divorce case was held in defendant's absence on March 6, 2013, and a JOD was entered. The judgment did not give defendant parenting time with his minor son or spousal support, but gave defendant until December 31, 2013, to file a motion to reinstate spousal support. LaBute received the couple's property in Alger County and $9,484.20 from defendant's Roth IRA. Her attorney, Russell Hall, drew up a qualified domestic relations order (QDRO) to transfer the money from the IRA to LaBute. Defendant refused to sign the QDRO, causing Hall to file a motion seeking authorization. Hall informed defendant of the hearing in a letter dated November 8, 2013, and in that letter invited defendant to call his office with any questions about the QDRO.

Defendant telephoned Hall on November 20, 2013, two days before the scheduled QDRO hearing. According to Hall, defendant told him that LaBute had violated HIPAA numerous times by conveying to him patients' private health information and that spousal privilege no longer prevented him from reporting the violations. Defendant claimed to have written letters to seven different families whose medical information LaBute had shared with him and to have given copies of the letters to a third party. Juxtaposed to these statements were four specific requests. Defendant wanted LaBute to renounce all claims to monies from his IRA, to pay him $1,000 a month in spousal support, to change custody of their son to joint custody, and to give him first right of refusal to purchase the camp property if and when she decided to sell the property.

Hall believed an act of extortion had occurred and he and LeBute jointly decided to contact the police. As instructed by Anthony LaPlant, a detective-sergeant with the city of Escanaba public safety department, Hall e-mailed defendant the following day, November 21, 2013, asking him to come to Hall's office at 3:30 p.m. to sign the stipulation for spousal support, and to bring with him all of the letters, including the backups. Defendant did not receive the e-mail in time to attend the meeting. Defendant responded to Hall's e-mail, expressing his appreciation for Hall's "willingness to honor [his] very reasonable requests," and his hope that it was "the first step in doing what's right from now on." Defendant stated that if LaBute relinquished in good faith "all claims to all Qualified monies in my name to the court tomorrow 11/22/13, I will be open to negotiating the details on the remaining reasonable requests next week." On November 22, 2013, defendant sent an e-mail to Hall stating that he wanted to hear from Hall "today after you speak to your client," and further stating that he hoped Hall had "advised [LeBute] to cease and desist discussing anything about my medical records with anyone, she needs to better understand that a registered nurse that refuses to protect private medical information won't be a registered nurse for long."

Hall obtained a two-week adjournment of the QDRO hearing and did not contact defendant for three days while he waited for the prosecutor's office to review the information it had been provided. Around 11:00 a.m. on November 25, 2013, Hall received an e-mail from defendant asking, "Does no reply indicate no interest in a civil and reasonable relationship moving forward?" Below this question defendant inserted the address of the Wisconsin Department of Safety and Professional Services, and to the e-mail he attached a file entitled "Carmen LaBute RN License.PNG." Later that afternoon, defendant sent Hall another e-mail in which he stated that Hall had "ignored every one of my simple suggestions for 'good will,' " provided three specific examples of requests that Hall and LaBute had not fulfilled, and stated in relevant part:

I have already given GOOD WILL. I've given your client $10,000 by not taking the Spousal Support I rightfully have coming for the past 10 months. I've also protected her employment by not reporting the many, many cases of her violating patient privacy.

. . . I will no longer protect her from her privacy violations at the end of business tomorrow.

Hall interpreted this e-mail as an ultimatum and a real threat to send out the letters. He contacted LaPlant, who obtained and executed a search warrant for defendant's cell phone and computer. LaPlant's investigation confirmed that the e-mails that Hall had received came from defendant's computer. Defendant was arrested, and eventually charged with extortion, using a computer to commit a crime, and aggravated stalking. A jury acquitted defendant of aggravated stalking, but convicted him of extortion and using a computer to commit a crime.

## I. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to convict him of extortion and of using a computer to commit a crime. We disagree. We review challenges to the sufficiency of evidence de novo and in a light most favorable to the prosecution to determine "whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). "Conflicts in the evidence must be resolved in favor of the prosecution." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (quotation marks and citation omitted). In addition, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Id*.

Regarding the extortion charge, defendant claims that the prosecutor did not establish that defendant acted with the malice that is required by MCL 750.213. Defendant insists that his discussion of LaBute's alleged HIPAA violations was a negotiation tactic aimed at securing relief from allegations that he violated personal protection orders and at resolving various issues relative to the JOD.

Our Supreme Court recently interpreted MCL 750.213 in *People v Harris*, 495 Mich 120; 845 NW2d 477 (2014). A defendant violates the statute when he or she

(1) either orally or by a written or printed communication, maliciously threatens (2) to accuse another of any crime or offense, or to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, or with the intent to compel the person threatened to do or refrain from doing any act against his or her will. [*Id*. at 128-129.]

According to the Court, "the Legislature's inclusion of a malice requirement provides law enforcement, judges, and juries with an explicit standard for applying MCL 750.213." *Id*. at

135-136. Observing that the Legislature did not intend to punish everyone who makes a minor threat, but rather only those "who *'maliciously'* threaten others," *id.* at 135, the Court defined "malice" as: "1. The intent, without justification or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights. 3. Ill will; wickedness of heart. This sense is most typical in nonlegal contexts." *Id.* at 136. Therefore, concluded the Court, "only those threats made with the intent to commit a wrongful act without justification or excuse, or made in reckless disregard of the law or of a person's legal rights, rise to the level necessary to support an extortion conviction." *Id.*

Viewed in the light most favorable to the prosecution, and resolving conflicts in the evidence in favor of the prosecution, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant acted with the malice required by MCL 750.213. It is beyond dispute that defendant threatened via e-mails to accuse LaBute of HIPAA violations if she did not accede to his requests. The purpose of defendant's threatening e-mails was to obtain pecuniary advantage in the form of $1,000 in monthly child support and a waiver of LaBute's lawful claim to his retirement account, and to force her to file a petition with the court that would result in defendant's joint custody of their son. The threats were clearly designed to force LaBute to abandon legal rights granted her by the JOD. *Harris*, 495 Mich at 136. Thus, a reasonable juror could find that defendant acted with the requisite malice and violated MCL 750.213 when, in reckless disregard[1] of LaBute's legal rights, he sent e-mails threatening to accuse her of HIPPA violations if she did not provide him with the pecuniary benefits demanded and relinquish sole custody of their son.

Defendant next contends that the evidence was not sufficient to support the conviction of using a computer to commit the crime of extortion because, according to Hall and LaPlant, all of the elements of the charged crime were present after defendant's November 20, 2013 telephone call to Hall, which was before the first e-mail was sent. Defendant maintains that the e-mails were "subsequent acts" under MRE 404b that were admitted to prove that the crime had occurred on November 20, 2013.

MCL 752.796 provides:

(1) A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime.

(2) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law committed by that person

---

[1] "Disregard" is "the action of ignoring or treating without proper respect or consideration." *Black's Law Dictionary* (10th ed). "Reckless disregard" is "conscious indifference to the consequences of an act." *Black's Law Dictionary* (10th ed). Defendant could be said to have been consciously indifferent to the effect his course of action would have on LaBute's legal rights under the judgment of divorce.

while violating or attempting to violate this section, including the underlying offense.

(3) This section applies regardless of whether the person is convicted of committing, attempting to commit, conspiring to commit, or soliciting another person to commit the underlying offense.

Defendant presumes that the November 20, 2013 threat is the sole basis for the charge of extortion because police devised the scheme to arrest defendant on November 21, 2013, which was before any e-mails had been sent. However, the felony information specifying the charges against defendant states an offense date of "on or around November 20-26, 2013." The record shows that during this time frame defendant engaged in a scheme of extortion wherein he threatened multiple times to report LaBute for HIPAA violations if she did not accede to certain specific requests, and that he used a computer to make some of those threats. Thus, the evidence adduced at trial was sufficient for a reasonable trier of fact to conclude that plaintiff had proved beyond a reasonable doubt that defendant used a computer to commit the crime of extortion. *Ericksen*, 288 Mich App at 195-196.

## B. EVIDENTIARY ISSUES

Defendant next argues that the trial court abused its discretion by admitting the inadmissible opinion of Hall that defendant was "kind of a bully" and LaPlant's statement that "the extortion was just one more thing in a laundry list of offenses that we were looking at." We review a trial court's determination to admit or exclude evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). A trial court abuses its discretion when its decision results in an outcome outside the range of reasoned and principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *King*, 297 Mich App at 472.

Although Hall's statement was an inadmissible opinion as to defendant's character under MRE 404b and MRE 405a, the trial court corrected its error with a curative instruction to the jury to disregard the testimony and not to consider it in any way or for any purpose. Defendant contends that the cautionary instruction was insufficient to cure the prejudicial impact of the evidence and that Hall's statement undermined defendant's credibility with the jury. We find, however, that the jury's acquittal of defendant on the charge of aggravated stalking calls defendant's contention into question, and illustrates the general presumption that jurors follow the jury instructions. *People v Messenger*, 221 Mich App 171, 180 n 3; 561 NW2d 463 (1997).

Defendant similarly contends that LaPlant's statement fatally undermined his credibility. This claim is belied, however, by the fact that out of that alleged "laundry list," police charged defendant with only three crimes, one of which defendant was acquitted. Furthermore, any prejudicial effect of LaPlant's statement was arguably minimal in light of the strength and weight of the untainted evidence. *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002). Assuming an error in the admission of the evidence, it does not affirmatively appear that it is

more probable than not that the error was outcome determinative. *King*, 297 Mich App at 472. Consequently, defendant is not entitled to relief. *Id*.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next raises a number of ineffective assistance of trial counsel and of appellate counsel issues in a Standard 4 brief. With respect to his trial counsel, defendant claims that he was ineffective by failing to request instructions from the court on defendant's theory of defense and on "just cause or error," and by failing to request an adjournment under MCR 6.425 in order to conduct a more thorough review of defendant's untimely received presentence investigation report (PSIR). The claims against trial counsel are unpreserved because defendant did not move for a new trial or request an evidentiary hearing. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Our review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "[C]ounsel's ineffective assistance must be found to have been prejudicial in order to reverse an otherwise valid conviction." *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant, *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), or by showing a failure to meet a minimum level of competence, *People v Jenkins*, 99 Mich App 518, 519; 297 NW2d 706 (1980). Defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

We find that defendant has failed to meet his heavy burden of proving that his trial counsel rendered ineffective assistance. Trial counsel's performance did not fall below an objective level of competence when he did not request a theory of defense instruction because, under the circumstances, none was needed. The purpose of a theory of defense instruction is "to explain a defense theory that is not clearly or adequately explained by pattern or standard jury instructions." *Black's Law Dictionary* (10th ed). Defendant's primary defense was that the elements of the crime of extortion had not been proved beyond a reasonable doubt because the prosecutor had not presented evidence establishing that defendant acted with the malice requisite for extortion. This defense theory was clearly and adequately explained by the standard jury instructions on the presumed innocence of the defendant, the burden of the prosecutor to prove every element of the charged crime beyond a reasonable doubt, the meaning of reasonable doubt, and the elements of extortion. Because there was no need for a theory of defense instruction in this case, trial counsel did perform deficiently by failing to ask for one. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Additionally, the record does not support additional instructions on "just cause or excuse." See *People v Lee*, 243 Mich App 163, 185; 622 NW2d 71 (2000). "Just cause or excuse" refers to justifications such as duress. Duress requires an exterior threat that puts a defendant in such fear of death or serious bodily harm that he commits a criminal act to avoid harm. M Crim JI 7.6. Defendant's claim that he would have abandoned his course of action had he known it was illegal belies any sort of exterior compulsion, let alone a threat serious enough to establish a defense of duress.

Finally, defendant has not overcome the presumption that his trial counsel provided effective assistance when reviewing defendant's PSIR. The record shows that defendant had adequate time to review the report to raise specific challenges to its content. Defense counsel did not timely receive a copy of the report, but it appears from the record that he had sufficient time to review the report. Consequently, defendant's counsel did not err when he did not request an optional adjournment under MCR 6.425 because none was necessary. The record does not clearly show that defendant did not have adequate time to review the PSIR, or that defense counsel performed deficiently by failing to ask for an adjournment under MCR 6.425. *Jordan*, 275 Mich App at 667. Further, defendant errs by assuming that the "written victim's impact statement" referred to in MCR 6.425(A)(1)(*g*) must be a first-person account physically written by the victim. MCL 780.764 gives a victim "the right to submit or make a written or oral impact statement to the probation officer for use by that officer in preparing a presentence investigation report concerning the defendant . . . ." Accordingly, a victim's impact statement must be that of the victim's, but it need not be a statement written and submitted by the victim. The victim may make an oral statement to the probation officer for inclusion in a defendant's PSIR. In the instant case, the victim's impact statement begins with "[t]he victim in this case indicated," a clear signal that LaBute made an oral statement that the probation officer reduced to writing before including in the PSIR. Because the victim's impact statement in defendant's PSIR complies with MCL 780.764, defendant's objection to the statement and request to strike it because it is not "authentic" must fail. Consequently, defendant has not overcome the presumption that he received effective assistance of counsel. *Seals*, 285 Mich App at 17.

Defendant also asserts two claims against his former appellate counsel, who was also his trial counsel. First, he contends that his appellate counsel rendered ineffective assistance by failing to raise the issue of his own ineffective assistance at trial. Having concluded that defendant has not overcome the presumption of his trial counsel's effective assistance, we find this issue without merit. Second, defendant claims that his appellate counsel rendered ineffective assistance by failing to appeal the trial court's scoring of offense variable (OV) 4. We also find this claim to be without merit.

An appellate attorney is not required to raise every possible argument for review, *People v Reed*, 449 Mich 375, 379 (BOYLE, J.), 402 (CAVANAGH, J.); 535 NW2d 496 (1995), and may legitimately discard weaker arguments in order to focus on those arguments that are more likely to prevail. *People v Gardner*, 482 Mich 41, 49 n 11; 753 NW2d 78 (2008). We conclude that, in light of the fact that defendant was tried and his conviction was appealed before our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), an appeal of the trial court's scoring of OV 4 on the record before us would have failed to provide defendant with relief. The trial court assigned 10 points to OV 4 for reasons that we have found adequate to justify such a score. *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004). In

addition, the trial court said that scoring OV 4 at zero would not have changed the sentencing guidelines recommendation. Even where there have been errors in scoring, we do not remand for resentencing where the "scoring error does not alter the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Given the unlikelihood of obtaining sentencing relief, defendant has not shown that appellate counsel's performance was deficient under an objective standard of reasonableness and that the deficiency prejudiced defendant. *People v Uphaus* (*On Remand*), 278 Mich App 174, 186; 748 NW2d 899 (2008).

Finally, defendant contends that the cumulative effect of the errors is sufficient to warrant reversal. This Court's having found no prejudicial error, defendant's contention fails. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

## D. SENTENCING ISSUES

In a supplemental brief, defendant contends, and the prosecution agrees, that he is entitled to a remand under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because the trial court used facts neither admitted by defendant nor found by a jury to have been proven beyond a reasonable doubt to calculate a mandatory minimum sentencing range of 30 to 50 months.

Under *Lockridge*, to make a threshold showing of plain error that could require resentencing, defendants must show that their "OV level was calculated using facts beyond those found by the jury or admitted by the defendants and that a corresponding reduction in the defendants' OV score to account for the error would change the applicable guidelines minimum sentence range." *Id*. at 399. For a remand to be appropriate, the trial court must have imposed a sentence within the guidelines minimum sentence range before the publication of *Lockridge*. *Id*.

The trial court scored 10 points each for OV 4 (serious psychological injury requiring professional treatment) and OV 19 (interfering or attempting to interfere with the administration of justice) based on a preponderance of the evidence found in the record. This resulted in a total OV score of 20 points, which falls within OV Level II. Thus, the guidelines minimum sentence range for defendant's score of PRV Level C and OV Level II was 30 to 50 months. The court sentenced defendant within the range to a prison term of 36 months. Deducting 20 OV points would result in a guidelines minimum sentence range of 24 to 40 months in prison. Although defendant's current sentence would fall within the adjusted range, he nonetheless is entitled to a *Crosby*[2] remand because he has met the threshold showing, the court imposed sentence prior to the publication of *Lockridge*, and the sentence was within the guidelines. Assuming that defendant wants resentencing, the trial court must resentence him if it determines that it would have imposed a materially different sentence under guidelines that were advisory rather than mandatory; otherwise, the trial court may affirm the original sentence. *Lockridge*, 498 Mich at 397-398.

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

Finally, defendant raises objections to statements in the PSIR that he exhibited "potential homicidal/suicidal" behavior, and that he "threatened to kill" his estranged wife for leaving him. These statements appeared in the agent's "evaluation and plan" section and in the agent's "description of the offense" section. Defendant disputes that he was homicidal and that he threatened to kill his estranged wife and urges us to remand for corrections of these statements.

Because defendant objected below to the agent's description of his behavior as "potential homicidal/suicidal," the objection is preserved, and we review the trial court's refusal to strike the language for an abuse of discretion. See *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003). Defendant did not object to the "threatened to kill" language below, nor did he raise the issue in a proper motion for resentencing or in a proper motion to remand filed in this Court. Consequently, this argument is not properly before us, and we decline to address it. MCL 769.34(10); MCR 6.429(C).

The trial court noted that the characterization of defendant's behavior was in the "evaluation and plan" section of the PSIR and was the agent's evaluation of defendant. Although the record contains conflicting testimony on the matter, defendant's estranged wife testified to an altercation that ended with defendant telling her that she was going to "burn in hell, and that he was going to get [her]," and that this upset and scared her. Thus, we find that, because there is credible evidence to support the agent's evaluation, the trial court's decision not to strike the "homicidal" language is not outside the "range of reasonable and principled outcomes," and, therefore, is not an abuse of discretion. *Duncan*, 494 Mich at 723.

We affirm defendant's convictions and the trial court's resolution of defendant's challenge to the PSIR, and remand the matter for the trial court to follow the *Crosby* procedure outlined in *Lockridge*. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder