## PEOPLE *v.* LANDRUM

### PEOPLE *v.* MILLER

Appeal from Recorder's Court of Detroit, Schemanske (Frank G.), J. Submitted Division 1 October 8, 1968, at Detroit. (Docket No. 4,391.) Decided November 25, 1968.

J. D. Landrum and R. L. Miller were convicted of manslaughter. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*John D. O'Connell,* for defendants.

PER CURIAM. The defendants, along with one Wilson, were charged with second-degree murder. After a lengthy jury trial Wilson was acquitted and the remaining defendants were convicted of manslaughter.

On appeal the following issues were raised for our consideration:

(1) Were the defendants deprived of a fair and impartial trial when the trial court reprimanded the defense counsel representing Wilson and Miller in the presence of the jury?

(2) Was it error for the trial court to permit a witness, prior to taking the stand, to read his own statement given to police shortly after the homicide?

(3) Did the prosecution sustain its burden of proof, as part of its case, that the killing of the deceased was not done in self-defense?

(4) Did the trial court deprive the defendants of their constitutional right to the assistance of counsel by prohibiting counsel from conferring with them even in whispers during the prosecutor's closing argument to the jury?

(5) Was reversible error committed when the prosecutor, in his argument to the jury at the conclusion of the case, stated that the defense had no reason to slander a dead man who could not be present at the trial to speak for himself?

(1) The killing occurred in a union hall where defendants had gone to discuss hiring practices with members of the union. Defense attorney described the members as a "mob." The prosecutor objected to the use of the word mob. The following colloquy then took place:

"*The Court:* I will sustain the objection to the use of the word 'mob.'

"*Q.* (*By Mr. O'Connell* [*defense counsel*]) Did you hear anyone invite these gentlemen members that rushed through there into the secretary's office?

"*The Court:* I do not want any sarcasm. I have ruled on it.

"*Mr. O'Connell:* Rule on that. I will follow your ruling.

"*The Court:* It is sarcasm.

"*Mr. O'Connell:* You said that they were members and I will refer to them as members.

"*The Court:* I want no further discussion.

"*Mr. O'Connell:* If you prefer for me not to call them gentlemen—

"*The Court:* Proceed.

"*Mr. O'Connell:* May I have a ruling on that, your Honor?

"*The Court:* I have struck both of them out so that there is no misunderstanding. They are men who are members of the union and they are there looking for a job, period.

"*Mr. O'Connell:* Your Honor, we ask for a mistrial."

We find no reversible error.

(2) The defendants assert that *People* v. *Parisi* (1935), 270 Mich 429, supports their position. In the *Parisi Case* a young lady examined a transcript sent to her father and thus an entirely different factual situation occurred in the *Parisi Case.*

We find no legal basis in support of this issue.

(3) The record discloses that a number of witnesses testified that the defendants were the aggressors and others testified to the contrary. The jurors were properly instructed on self-defense and it is within their province to weigh and determine the credibility of each of the witnesses who testified.

(4) The transcript discloses the following:

"*Mr. Nolan (prosecuting attorney):*     *     *     * Your Honor, I wonder if Mr. O'Connell would stop these loud whispers? I heard that and I think that a number of jurors did.

"*Mr. O'Connell:* I would like to ask if the jurors heard anything I said, your Honor.

"*The Court:* Well, did you say something to the—

"*Mr. O'Connell:* I whispered to the defendant.

"*The Court:* Did you say something to the attorney?

"*Mr. O'Connell:* No, I did not say anything to the attorney.

"*The Court:* What?

"*Mr. O'Connell:* No, I did not say anything to the attorney.

"*Mr. Nolan:* A loud whisper to his client, or to somebody back there.

"*The Court:* Look, I want no talking at the table at all. There is no talking. After all, this is a courtroom and let's conduct ourselves accordingly.

"*Mr. O'Connell:* Could I ask, your Honor, so the record is clear if any of the jurors heard anything that I said?

"*The Court:* No. I am not going to make a mountain out of a molehill.

"*Mr. O'Connell:* I mean, it sometimes happens, your Honor, that—

"*The Court:* I am just going to leave it, whatever transpired. I didn't hear anything. I wasn't looking in that direction. I don't know.

"*Mr. O'Connell*: It sometimes happens, your Honor, that something comes up during the arguments.

"*The Court:* Well, there is nothing for anyone to discuss now, because you are through with your argument. If you have an objection, raise it to the court.

"*Mr. O'Connell:* Well, what if I want to refresh my recollection as to something he is talking about with my client. Can't I talk to a whisper to my client here?

"*The Court:* No, I don't think—

"*Mr. O'Connell:* Throughout this trial the detectives sitting much closer to the jury box than we are here now.

"*The Court:* Proceed.

"*Mr. O'Connell:* Kept talking to the prosecutor, and we didn't object.

"*The Court:* Proceed."

We find no error in the court's ruling.

(5) This remark applied equally to all three defendants. The jury's acquittal of the one defendant leads us to the conclusion that such remark did

not prejudice the jury. Moreover, the trial court's
attention was not directed to the remark.
Affirmed.

J. H. GILLIS, P. J., and R. B. BURNS and KELLEY,
J., concurred.