*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BEAU WILLIAM CALLAGHAN,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 355857
Wayne Circuit Court
LC No. 19-002959-01-FH

Before: GLEICHER, P.J., and K. F. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b, and assault, MCL 750.81.[1]  He was sentenced to two years' imprisonment for his felony-firearm conviction, and one year probation for his assault conviction.  Finding no errors warranting reversal, we affirm, but remand for the ministerial correction of the judgment of sentence.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of events that occurred at a residence in Westland, Michigan, where Timothy Kittle was roommates with defendant's girlfriend, Melissa Redick, and Redick's young child fathered by defendant.  In March 2019, Kittle was cleaning at the home with his girlfriend, Katie Shoemaker.  Defendant and Redick were in the basement.  Kittle and Shoemaker were searching for plastic garbage bags and inquired of defendant and Redick where the bags were.  Defendant and Shoemaker began arguing.  Defendant testified that he heard "somebody get

---

[1] In the supplemental information, defendant was charged with felonious assault, MCL 750.82, felony-firearm, MCL 750.227b, domestic violence, MCL 750.81(2), and assault, MCL 750.81. The domestic violence offense was not presented to the jury, and the jury did not reach a verdict on the felonious assault charge.  The judgment of sentence, incorrectly identifies the statutory provision for defendant's conviction as MCL 750.82, rather than MCL 750.81.  We remand this matter solely for the ministerial correction of the citation in the judgment of sentence.

assaulted" upstairs. He also heard Shoemaker yell, "I'm gonna f**kin' kill him" and "then[] somebody just bolted down the stairs, like they were about to hit the wall in front of 'em." In response to these events, defendant pulled out a gun. Kittle testified that he went downstairs "to de-escalate the situation," and found defendant was pointing a black semiautomatic handgun at Kittle's chest. As Kittle approached, defendant put the handgun away behind his back. Kittle then called the police. Accordingly, defendant's charges arose from this argument, confrontation, and weapon pointed at Kittle. Despite a plea offer to dismiss the felony charges with a condition of anger management classes, defendant rejected the offer and proceeded to trial.

Voir dire was conducted by the trial court.[2] At the conclusion of voir dire, defense counsel made a record of a request for the trial court to question potential jurors on the issue of "whether or not anyone had any particular problems with a person actually defending themselves." The trial court declined to do so, noting that it had not asked the jury to accept or reject any theory of the case raised by the prosecution or the defense. Moreover, the trial court noted that jurors are presumed to follow the court's instructions. Because it was unclear if defendant would be entitled to a self-defense instruction until evidence was admitted, the trial court did not "want to get the jury thinking about a theory that ultimately ended up not being a part of the case." Moreover, the trial court stated that the failure to support a claim of self-defense could hurt defendant. On the third day of the jury trial, the trial court gave the jury a full instruction regarding self-defense. Despite this theory, the jury found defendant guilty of felony-firearm and assault, but failed to come to a decision on the felonious assault charge. This appeal followed.

## II. VOIR DIRE

Defendant alleges that his right to select an impartial and unbiased jury was denied by the trial court's unreasonable and unfair limitations on voir dire. We disagree.

Generally, to preserve an issue of jury selection for appeal, a party must either exhaust all of its peremptory challenges or refuse to express satisfaction with the jury. *People v Jendrzejewski*, 455 Mich 495, 515 n 19; 566 NW2d 530 (1997); *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992). Defendant neither exhausted his peremptory challenges nor expressed dissatisfaction with the empaneled jury. Thus, the issue is unpreserved. *Id*. The appellate court reviews unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 752-753; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). The right to a fair and impartial jury is a constitutional right, and questions of constitutional law are reviewed de novo. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). The manner in which a trial court decides to conduct voir dire is reviewed for an abuse of discretion. *People v Williams*, 241 Mich App 519,

---

[2] Wayne County Circuit Court Qiana Lillard was in the process of completing a jury trial. Consequently, Wayne County Circuit Court Judge Michael Hathaway merely conducted the voir dire in her stead, and Judge Lillard presided over the remainder of the trial.

522; 616 NW2d 710 (2000). An abuse of discretion occurs when the trial court's decisions falls outside the range of reasonable and principled outcomes. *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020).

The intention of voir dire is to draw out sufficient information to determine whether a rational basis exists to exclude potential jurors that are not impartial. *Tyburski*, 449 Mich at 618. Thus, potential jurors are questioned to discover any bias that may prevent them from fairly rendering a verdict in a case. *Id.*

MCR 6.412(C) governs voir dire of prospective jurors and provides:

> (1) Scope and Purpose. The scope of voir dire examination of prospective jurors is within the discretion of the court. It should be conducted for the purposes of discovering grounds for challenges for cause and gaining knowledge to facilitate an intelligent exercise of peremptory challenges. The court should confine the examination to these purposes and prevent abuse of the examination process.

> (2) Conduct of the Examination. The court may conduct the examination of prospective jurors or permit the lawyers to do so. If the court conducts the examination, it may permit the lawyers to supplement the examination by direct questioning or by submitting questions for the court to ask. On its own initiative or on the motion of a party, the court may provide for a prospective juror or jurors to be questioned out of the presence of the other jurors.

The use of the term "may" denotes discretionary action, but the use of the term "shall" denotes a mandatory, nondiscretionary provision. *People v Seeburger*, 225 Mich App 385, 392-393; 571 NW2d 724 (1997). Accordingly, the trial court's decision to conduct voir dire nonetheless allows for the submission of supplemental examination or questions by the attorneys, but the trial court is not required to ask questions raised by the attorneys. See *id.*; MCR 6.412(C)(2).

There are no hard and fast rules addressing what constitutes acceptable voir dire practice. *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). "Rather, trial courts must be allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Id.* at 186-187 (citation and internal quotation omitted; emphasis in original). However, "where the trial court, rather than the attorneys, conducts voir dire, the court abuses its discretion if it does not adequately question jurors regarding potential bias so that challenges for cause, or even peremptory challenges, can be intelligently exercised." *Tyburski*, 449 Mich at 619, citing *Fedorinchik v Stewart*, 289 Mich 436, 438-439; 286 NW 673 (1939). Consequently, "a trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges." *Taylor*, 195 Mich App at 59, citing *People v Mumford*, 183 Mich App 149, 155; 455 NW2d 51 (1990). Again, a defendant "does not have a right to . . . have the court ask questions submitted by counsel." *Tyburski*, 449 Mich at 619; MCR 6.412(C)(2).

In the present case, defense counsel sought to question potential jurors on the issue of "whether or not anyone had any particular problems with a person actually defending themselves." However, defendant was not entitled to have the trial court present this broad, non-specific self-defense question to the prospective jurors. Rather, a trial court "may permit" lawyers to

"supplement the examination" by "submitting questions for the court to ask," MCR 6.412(C)(2), but a defendant does not have the right to have the court question the jurors as requested by counsel, *Tyburski*, 449 Mich at 619. The trial court denied the request, noting that it was questionable whether a self-defense instruction would apply to defendant's case, and there had not been any evidence offered at that time to support the question or an instruction. Further, the trial court noted that an examination of the jurors on the question of self-defense could be harmful to the defense if the theory was not later supported before the jury. Thus, there was no reason to present such questioning to the potential jurors at the time of voir dire, since there was no evidence of self-defense being an issue in the case. Given that defendant did not have a right to have the trial court present the questions he requested, there was no abuse of discretion. Accordingly, defendant failed to demonstrate plain error arising from the omitted juror question.

Defendant submits that the trial court abused its discretion in light of *Taylor*, 195 Mich App 57. In *Taylor*, the defendant shot her husband in the face while the couple was in the midst of a divorce. *Id*. at 59. The defendant argued she acted in self-defense, but her husband claimed that he was shot as an act of revenge. *Id*. Her counsel made several requests to the trial court to ask questions during voir dire regarding the jury's views on the use of deadly force and self-defense, but the trial court refused to do so. *Id*. Although the trial court was reversed on other grounds, this Court also concluded that the trial court abused its discretion by refusing to ask *any* questions addressing the subject of self-defense and juror attitudes toward the use of deadly force. *Id*. at 59, 64.

Defendant submits this case is analogous to *Taylor* because, in both cases, the trial court's refusal to allow questioning of prospective jurors regarding self-defense prevented defendant from intelligently exercising his peremptory challenges. However, at the time of voir dire in the present case, there was no indication that defendant had a valid claim of self-defense. Rather, the witnesses indicated that there was an argument that began over garbage bags. Kittle did not indicate that he made any threats or overt acts that would warrant defendant's use or need for a firearm. The question of self-defense only became pertinent when defendant testified about overhearing threats and sounds of an assault. Prior to defendant's testimony, defendant did not made an offer to the trial court to support self-defense. As recognized by the trial court, there was no way to know if self-defense was going to be a relevant theory in the case when the jury was selected. *Taylor* is also distinguishable because the defendant in *Taylor*, unlike defendant in this case, stated she was not satisfied with the jury, and therefore preserved her argument. *Id*. at 60.

Furthermore, we note that *People v Lynn*, 229 Mich App 116, 122; 580 NW2d 472 (1998), rev'd on other grounds 459 Mich 53 (1998), is instructive. In *Lynn*, the defendant was charged with carrying a concealed weapon (CCW). Defense counsel requested the opportunity "to fully question the jurors about their attitudes toward the CCW statute." This Court concluded that the trial court did not abuse its discretion by refusing to permit the questioning because defense counsel was not entitled to "go on a dissertation on the law." *Id*. Indeed, self-defense is permitted under Michigan law, MCL 780.972, and if the evidence supported the instruction, the trial court would provide the instruction, and jurors are presumed to follow the instructions. *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

Finally, although defendant repeatedly claims the trial court's decision regarding his requested voir dire question made it impossible for him to develop a factual basis for the exercise

-4-

of peremptory challenges, he failed to offer a specific argument in support of this claim. He merely claims it is so. This deficiency constitutes an abandonment of the issue. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Accordingly, the manner in which the trial court conducted voir dire did not provide a ground for reversal of his convictions.

### III. ASSAULT

Defendant contends there was insufficient evidence to support his assault conviction. We disagree.

In a criminal case, the prosecution must introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "This Court reviews de novo defendant's challenge to the sufficiency of the evidence. We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011) (internal citations omitted). In doing so, "a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation and quotation marks omitted; emphasis in original). "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (citation omitted).

"[A] simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979) (internal quotation and citation omitted). "A battery is the consummation of an assault." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). MCL 750.81(1) applies to "a person who assaults or assault and batters an individual . . . ."

Viewing the evidence in the light most favorable to the prosecution, the prosecutor introduced sufficient evidence to justify a finding of guilt beyond a reasonable doubt. *Harris*, 495 Mich at 126. An assault clearly occurred in this case, given defendant's admission that he pointed a loaded gun at Kittle. Indeed, having a gun pointed at one's body would cause a reasonable person to fear or apprehend an immediate battery. See *People v Reeves*, 458 Mich 236, 244; 580 NW2d 433 (1998). Kittle testified that defendant appeared to debate whether or not he would shoot Kittle, and Kittle's life flashed before his eyes because he believed defendant would pull the trigger. In addition, there was sufficient evidence for the jury to conclude that defendant intended to put Kittle in reasonable apprehension of an immediate battery. Pointing a gun at someone is an action likely to cause them to reasonably fear an immediate battery, particularly if the gun is loaded, as it was in this case.

Nonetheless, defendant submits that there was insufficient evidence to support his assault conviction because defendant did not have the necessary *mens rea* to commit the crime of assault, but rather, he acted to protect himself and his young son from the threats and sound of an assault that he heard coming from upstairs.

MCL 780.972 addresses self-defense and states, in relevant part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

* * *

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual . . . .

Where witnesses testify regarding aggressors and the jury is properly instructed on self-defense, it is the province of the jury to weigh and determine the credibility of the witnesses. *People v Landrum*, 14 Mich App 237, 239; 165 NW2d 292 (1968). Because of the difficulty in proving state of mind, minimal circumstantial evidence is sufficient, and the jury is to resolve issues surrounding weight, credibility, and inferences pertinent to self-defense. See *People v Anderson*, 322 Mich App 622, 633; 912 NW2d 607 (2018).

In the present case, Kittle testified regarding an argument that precipitated his travel to the basement where defendant pointed a gun at him. On the contrary, defendant testified that he heard threats and the sound of an assault coming from upstairs that caused him to draw his weapon in defense of himself and his son. Despite this claim of self-defense, the jury rejected defendant's testimony and convicted him of assault. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's verdict.

Affirmed, but remanded for the ministerial correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Amy Ronayne Krause

-6-