*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 20, 2023

Plaintiff-Appellee,

v

No. 360029
Charlevoix Circuit Court
LC No. 2021-020614-FH

JONATHON PAUL STEWART,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

A jury convicted defendant, Jonathon Stewart, of making a terrorist threat, MCL 750.543m(1)(a), and malicious use of a telecommunications service or device, MCL 750.540e. The trial court sentenced Stewart as a fourth-offense habitual offender, MCL 769.12, to a prison term of five to 20 years for the making a terrorist threat conviction and to a jail term of 201 days for the malicious use of a telecommunications service or device conviction. Stewart appeals as of right. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In June 2021, a Charlevoix County Friend of the Court (FOC) child support investigator sent Stewart a motion and order to show cause why Stewart should not be held in contempt for failure to pay child support. Stewart made a series of telephone calls in response. Initially, he reached a circuit court employee in the office of Charlevoix Circuit Judge Roy C. Hayes III. The employee transferred the call to the FOC's main telephone line. A FOC secretary answered, and Stewart told her that a FOC employee had mailed him something and that he wanted to talk to someone. The secretary asked him his name, but he refused to provide it. He demanded she tell him her name and she told him that it was Cindy. She advised that she would end the call if he would not identify himself. He refused and so she terminated the call.

Stewart placed another call. This time he reached an employee at the Charlevoix County Equalization Department. He again refused to disclose his name to that person because he "did not want to be judged." The employee testified that Stewart was very angry, asked to speak with the judge, and told her that the employees at the FOC kept hanging up on him. She recalled that

-1-

he told her that "the Bitches at the Friend of the Court wouldn't transfer him." He also used other swear words like "fuck" and "motherfuckers." She looked up the number for the FOC and provided it to Stewart. He told her that if he did not get through to someone he was "going to have to drive two hours up there to the courthouse and that nobody would want to know what would happen if he had to do that." Although he continued to rant angrily about the FOC, he calmed down enough that the employee was able to transfer his call to the FOC.

The same FOC secretary answered. She testified that Stewart asked to speak to "someone in charge." She asked him for his name and he again refused to disclose it. She told Stewart that she could transfer the call but that it might not be accepted because he would not identify himself. Stewart told her that there was a bias in the FOC office where somebody treated him unfairly and so he would not provide his name. Stewart asked to speak to a supervisor. The secretary told him that she needed his name so that she could verify that he had a case and so that she could transfer his call to the proper person. Stewart said that was "dumb." She again asked for his name. He responded, "I need you to do your job and transfer me to a supervisor." Stewart was more agitated during the second call. She ended the call when he told her that he was recording the call.

At 1:25 p.m., the circuit court employee in Judge Hayes's office received a second call from Stewart. He told her that the FOC had hung up on him and that he needed to be transferred back to the FOC. She transferred the call directly to the FOC secretary's phone line. The call went to the secretary's voicemail. Stewart left a message saying: "Hey Cindy, you don't know my name but I guarantee you're gonna want to call the cops because I will be outside waiting for you after work to discuss this with you without a phone between us." The secretary listened to the voicemail message shortly after it came in.

At 1:27 p.m., the circuit court employee in Judge Hayes's office received a third call from Stewart. When she answered the call, Stewart "said right away that I needed to get a cop on the phone or he was going to come down and start shooting." The employee tried to explain to Stewart that he had reached a judge's office and that an officer was not available to her. The employee testified that she took the following notes after the 1:27 p.m. call as follows:

> Called again. When I answered he told me to get a cop on the phone now. If I didn't get a cop on the phone he was going to come down and start shooting. I tried to explain this was the Judge's office and to get his name and he kept yelling he was going to shoot me if I didn't get a cop on the phone. I asked his name again and he said, "Why are you being so fucking stupid? You're being threatened, get a cop on the phone or I'm going to come down and show you what somebody can do that is pissed off." He repeatedly said that I needed to get a fucking cop on the phone or he was going to shoot me.

The employee put the call on hold and told the court's bailiff about the threat. The bailiff arrived in less than a minute and found her visibly upset. According to the bailiff, the employee reported that she had received several phone calls from the same caller and that during the last call the caller said that he was "gonna come down and start shooting or shoot her" and that he wanted a cop on the phone. The bailiff was able to retrieve the name and number from the phone display before the call disconnected. The bailiff's learned that the FOC had received similar phone calls. Because the threats seemed "very serious," the bailiff secured the facility.

The number retrieved from the court employee's phone was traced to a residence in Montmorency County that was associated with Stewart. A police deputy from Montmorency County went to the address at 2:32 p.m. the same day. Stewart acknowledged that he knew why the deputy was there and, when asked whether he had made threatening remarks that included "shooting them," Stewart responded that he "had a bad morning." Stewart admitted that he made phone calls to Charlevoix County and that he yelled and screamed, but he denied making any threats. Later, in a jailhouse phone call, Stewart suggested that he had committed the first two elements of an act of terrorism but he explained that he had only threatened an individual, not "the courthouse." Similarly, at trial, Stewart testified that he had called to clear up his issues and air his grievances with the FOC. He was angry because the FOC kept hanging up on him. Stewart admitted that he made the statements attributed to him by the Equalization Department employee. He also admitted that he threatened to shoot the circuit court employee. Stewart testified, however, that his threat was not intended to influence or affect the conduct or government or a unit of government through intimidation or coercion.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Stewart argues that the evidence was insufficient to establish beyond a reasonable doubt that he intended his threat to the circuit court employee to influence or affect the conduct of government or a unit of government through force or coercion. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). The evidence is viewed in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014).

### B. ANALYSIS

To demonstrate that a defendant is guilty of making a terrorist threat under MCL 750.543m(1)(a), the prosecution must prove that the defendant (1) threatened to commit an act of terrorism and (2) communicated the threat to another person. Under MCL 750.543b(a), an act of terrorism is "a willful and deliberate act" (1) "that would be a violent felony under the laws of this state," (2) that the defendant "knows or has reason to know is dangerous to human life," and (3) "that is intended to intimidate or coerce a civilian population or to influence or affect the conduct of government or a unit of government through intimidation or coercion." The prosecution is not required to prove that the defendant had the intent or the capability to actually carry out the threatened act of terrorism, MCL 750.543m(2), but the prosecution must prove the defendant's general intent to communicate a true threat, "i.e., a communication of a serious expression of intent to commit an act of unlawful violence." *People v Osantowski*, 274 Mich App 593, 603, 605; 736 NW2d 289 (2007), rev'd in part on other grounds and lv den in part 481 Mich 103 (2008).

Here, Stewart concedes that a threat to shoot is a violent felony that he knew or had reason to know was dangerous to human life. He argues, however, that because the threat was personal in nature, there was insufficient evidence to show that his act was intended to influence or affect the conduct of government or a unit of government through intimidation or coercion.

Stewart's argument focuses only on his threat to shoot the circuit court employee if she did not get a cop on the phone. He does not address his additional threat to "come down there and shoot" if the employee did not get a cop on the phone. This threat was made after a series of events demonstrating Stewart's increasing anger regarding his inability to reach either a supervisor in the FOC or Judge Hayes. During his conversation with the Equalization Department employee, Stewart ranted angrily about the "bitches" in the FOC who had hung up on him. He told the Equalization Department employee that if he did not get through to someone he was "going to have to drive two hours up here to the courthouse and that nobody would want to know what would happen if he had to do that." Stewart was more agitated during his second call with the FOC secretary. After she again hung up on him, he then left a voicemail message stating, "I guarantee you're gonna want to call the cops because I will be outside waiting for you after work to discuss this with you without a phone between us." This evidence, together with the subsequent threat to "come down there and shoot," was sufficient for a reasonable jury to conclude that Stewart's threat, while directed at one person, threatened a group of people—those who were present at the county building—and that the threat was intended to influence the circuit court employee to do what he wanted her to do through intimidation or coercion. There was, therefore, sufficient evidence to establish the third element of a threat of terrorism.

Next, in a supplemental brief, Stewart suggests that the prosecution did not establish that his statement was a true threat. We disagree. The trial court instructed the jury in accordance with M Crim JI 38.4(3), which specifically provides that to prove the crime of making a threat to commit an act of terrorism the prosecution must prove that the threat "must have been a true threat, and not have been something like idle talk, or a statement made in jest, or a political comment. It must have been made under circumstances where a reasonable person would think that others may take the threat seriously as expressing an intent to inflict harm or damage." During his closing argument, Stewart's lawyer stated that the evidence did not suggest "that this was idle talk or a statement made in jest or political comments." Viewing the record in the light most favorable to the jury verdict, there was sufficient evidence to show that Stewart made a true threat.

## III. ADEQUACY OF THE CHARGING DOCUMENT

### A. STANDARD OF REVIEW

Stewart next argues that the felony information did not apprise him sufficiently of the charge of making a terrorist threat because it did not identify the act of terrorism, did not identify to whom the threat was made, and did not identify the method in which the threat was communicated. Because his issue was not raised in the trial court, our review is for plain error affecting Stewart's substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain error standard, a defendant must show: (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected his substantial rights in that the error affected the outcome of the lower court proceedings. *Id*. at 763.

### B. ANALYSIS

Due process entitles a defendant to reasonable notice of the charges against him and an opportunity to present his defense. *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009). "[T]he constitutional notice requirement is not an abstract legal technicality; it is a

practical requirement that gives effect to a defendant's right to know and respond to the charges against him." *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003) (quotation marks and citation omitted). "An information is presumed to be framed with reference to the facts disclosed at the preliminary examination." *People v Stricklin*, 162 Mich App 623, 633; 413 NW2d 457 (1987).

Here, the felony information alleged, with respect to the charge of making a terrorist threat, that Stewart "did threaten to commit an act of terrorism and did communicate that threat to another person; contrary to MCL 750.543m." The information quoted the language of MCL 750.543m(1)(a). The information, coupled with the evidence presented at the preliminary examination and the prosecutor's arguments in support of the bindover request, put Stewart on notice of the acts with which he was being charged. The prosecutor specifically argued that the threat that constituted the felony for purposes of the act of terrorism was the threat to shoot that was made to the circuit court employee. The record, therefore, demonstrates that Stewart was fully apprised of the nature of the charge against him so he could adequately put forth a defense. His ability to defend against the charge was not prejudiced by the alleged deficiency in the information. Because there is no prejudice to Stewart's defense, reversal is not required, even if the information may have been facially defective. See *McGee*, 258 Mich App at 700.

## IV. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Stewart raises a number of claims of unpreserved allegations of prosecutor misconduct. Because the issue of prosecutorial misconduct is unpreserved, our review is for plain error. *Carines*, 460 Mich at 763-764.

### B. ANALYSIS

Stewart argues that the prosecutor committed misconduct during closing argument by implying that he was a liar, dishonest, and should not be trusted. The prosecutor stated:

We don't have to take [Stewart's] word for it. He tells you, "No I didn't intend to scare anybody." We don't have to take his word for it.

\* \* \*

So does [the circuit court employee] have any reason to make that up? Does she have any reason to lie about that? Or does [Stewart]? Does [Stewart] have any motive to not tell the truth about that?

\* \* \*

So on this issue, right, and I think it talks about if the witness deliberately lied about something that's important to how you decide the case, if you find that you believe that on the issue of, did he threaten to come over and start shooting, [Stewart] is lying what this instruction tells you, you know, I don't have to believe anything that guy tells me. I don't have to.

-5-

A review of the challenged remarks in context reveals that the prosecutor was not calling Stewart a liar or disparaging the defense. In the first instance, the prosecutor was explaining the jury instruction on intent. In the second and third instances, the prosecutor was explaining the jury instruction on witness credibility. A prosecutor may argue from the facts in evidence that the defendant or another witness is worthy or not worthy of belief. *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007). The prosecutor's comments were not improper.

Stewart next argues that the prosecutor mischaracterized the evidence when he said:

Think about the voicemail that he left for [the FOC secretary] when trying to look at his state of mind, he wanted to scare [her]. "When you go out to your car tonight have a cop there with you." He wanted to threaten her, intimidate her. And then he did that to [the circuit court employee] too.

The prosecutor did not mention that in the last part of the voicemail Stewart said that he would be waiting for the employee after work *to discuss this with you without a phone between us*. On appeal, Stewart argues that because the prosecutor did not mention the latter part of the voicemail, the prosecutor mischaracterized the voicemail as a threat. However, the challenged statement, even with the inclusion of the additional language, was sufficient to support the prosecutor's assertion that Stewart intended to threaten and intimidate her. Thus, the prosecutor's omission of part of Stewart's voicemail did not mischaracterize an otherwise benign statement as a threat. Rather, his argument that the statement was a threat is a reasonable inference from the available evidence. See *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001) ( noting that "the prosecutor may argue reasonable inferences from the evidence."). The prosecutor's statement, therefore, was not improper.

Stewart also asserts that "the prosecutor went on to describe his efforts and the trial as being fun for him," but he makes no effort to explain how the comment was improper. The record reflects that after discussing the elements of the crime of making a terrorist threat, the prosecutor said:

Now this is kind of an odd, in my opinion, which my opinion doesn't count for much and it's not evidence, a different instruction for a crime because we have two sets of elements that need to be established to prove this crime and then now, to make it really fun for me, there's a second set of elements that I must prove, and this is because it has to be an act of terrorism that's threatened[.]

In context, it is clear that the prosecutor was merely acknowledging that he had his work cut out for him to meet the charges. We discern no impropriety.

Next, Stewart argues that the prosecutor invaded the province of the jury by noting that Stewart conceded the first two elements of an act of terrorism. The prosecutor suggested that the jury, as a result of that concession, need not spend time debating those elements. The prosecutor's remark was a proper comment on the evidence because Stewart did, in fact, admit to these two elements. Stewart similarly contends that the prosecutor invaded the province of the jury in his rebuttal argument by stating the "elements in this case have been proven beyond a reasonable doubt and I do ask you to find him guilty of both charges." Stewart fails to explain how arguing

that the elements of the crimes were proven beyond a reasonable doubt and asking the jury to find him guilty invades the province of the jury. He has not shown plain error.

Next, Stewart argues that the prosecutor denigrated the defense lawyer while responding to the defense allegation that the prosecutor hid part of the jury instructions from the jury. The prosecutor stated, in relevant part:

> Remember [Stewart's lawyer] just stood before you and told you, you know, [the prosecutor] didn't show you the whole instruction and I think it was intentional because he didn't want to talk about his intent to commit the felony as an act of terrorism. That's what he just told you. And I thought maybe I made a mistake for just a fraction of a second, but he made a mistake. And I don't hold it against him, but he tried to imply that I was trying to mislead you or trying to hide the ball from you. And that's not what happened.

A prosecutor's remarks must be examined in context and evaluated in light of defense arguments. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). Here, the prosecutor was properly responding to the defense lawyer's argument that when the prosecutor was trying to mislead the jury.

Stewart next contends the prosecutor improperly put words in his mouth by arguing that Stewart "wants to say well, if it's not 9/11 or if it's not Timothy McVeigh then it's not terrorism." The prosecutor's argument was made in response to the defense lawyer's examples of terrorism "in our everyday world." Stewart's lawyer referred to acts such as ransomware attacks on computer software that operates units of government, poisoning the water supply, threatening to bomb a civilian population, random snipers attacking people in a community, and flying a plane into the Pentagon. In response, the prosecutor argued:

> You know, [the defense lawyer] talks about why he thinks the statute of terrorism is what it is, and I'm not gonna sit here—I don't think it's appropriate so I'm certainly not going to tell you as a prosecutor why I think the statute is what it is, it doesn't matter. You hold the statute in your hands. He wants to say well, if it's not 9/11 or if it's not Timothy McVeigh than it's not terrorism. Is that what the statute says? And that's what you'll have to decide.

The prosecutor's statement was responsive to the gist of the defense argument, and it was not improper.

Lastly, Stewart argues that the prosecutor replayed videos on rebuttal that should have been played during his closing argument. The prosecutor played the video to demonstrate discrepancies in the defense version of events. Stewart does not provide any support to suggest that a prosecutor cannot play videos on rebuttal, particularly where it is in response to defense argument. Stewart also claims that the prosecution used the video to argue that the defense fabricated a defense and that the prosecutor misdirected the jury. However, in light of the record, the prosecutor's argument was a reasonable inference from the facts. Further, Stewart does not identify the remark that allegedly misdirected the jury, nor does he attempt to explain how the prosecutor misdirected the jury. Under these circumstances, Stewart has failed to demonstrate plain error.

## V. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Stewart argues that he was denied the effective assistance from his lawyer. "When no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

To obtain a new trial, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Stewart first argues that his lawyer was ineffective by failing to move for a directed verdict on the charge of making a terrorist threat at the close of the prosecution's case. However, he acknowledges that "it cannot be said that there was a reasonable probability that the trial court would have granted such a motion." Indeed, given that there was sufficient evidence of each element of the crime, such a motion would have been futile. A defense lawyer is not ineffective for failing to make a futile objection or to advance a meritless argument. *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020).

Stewart next argues that his lawyer failed to make a record regarding whether it was Stewart's decision to testify. He does not, however, allege that his lawyer did not advise him regarding the consequences of testifying, nor does he claim that he did not wish to testify. Moreover, after the prosecution rested, Stewart's lawyer requested "one second to confer with my client." Accordingly, it is not apparent that no discussion took place. Stewart has failed to demonstrate that his lawyer's performance was deficient.

Finally, Stewart argues that his lawyer provided ineffective assistance by failing to move to quash the "defective" information. Yet, the felony information coupled with the evidence and argument presented at the preliminary examination provided adequate notice regarding the charge of making a terrorist threat and Stewart had ample opportunity to present his defense. Accordingly, the defense lawyer did not provide ineffective assistance by failing to make a futile motion to quash the information. See *id*.

## VI. SENTENCING

### A. STANDARD OF REVIEW

Stewart argues that the trial court erred when scoring offense variables (OVs) 4 and 19. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

## B. ANALYSIS

Stewart argues that the trial court erroneously assigned a 10-point score for OV 4, which deals with "psychological injury to victim[.]" See MCL 777.34. Ten points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). A trial court should assess 10 points for OV 4 "if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). And a 10-point score is appropriate "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

During trial, the circuit court employee testified that she "was pretty nervous about coming to work for long time." In a letter to the court that was attached to the presentence investigation report (PSIR), she said that in her 17 years of work with the prosecutor's office, the FOC, and the circuit court she had never been afraid to leave her office after work and come back in the morning or to be in the building alone. She had never worried about checking every room when she arrived to make sure nobody was in the office when she arrived or "feeling the weight of fear taking over as I'm turning off all of the lights to leave at the end of the day and feeling like I can't get out the door fast enough." She said that the fear extended to her home life, recounting that:

> I was afraid to take my dog out after dark or to be home by myself. And felt almost paralyzed with fear at the end of each day knowing that I had to do it all over again the next day. But I've never had someone threaten to take my life until now. For months this became my normal. I was running in survival mode but trying to pretend that I was fine.

She said that Stewart took away "some of my feelings of security." In her allocution at sentencing, she said, "I still have feelings of anxiousness."

These statements demonstrated that the circuit court employee experienced anger, fright, and feelings of being anxious and unsafe. They provided a reasonable basis for the trial court to conclude that the employee actually suffered a serious psychological injury that may require professional treatment. The trial court did not clearly err by finding that a preponderance of the evidence supported a 10-point score for OV 4.

Stewart next argues that the trial court erroneously assessed 25 points for OV 19 because the judge was not in the courthouse on the day of the incident. OV 19 addresses threats to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. MCL 777.49. OV 19 is properly scored at 25 points when the offender's "conduct threatened the security of a penal institution or court." MCL 777.49(c).

Stewart was talking to a court employee located at a courthouse when he threatened to come down and start shooting. The bailiff secured the building in response to his threat. Stewart presents no authority for his argument that he could not have threatened the security of the court because the judge was not in the building and because court was not in session. Nothing in the language of MCL 777.49 defines "a court" to mean only a judge. Had the Legislature intended to limit the statute to judges, it would have used language to convey that intention. The trial court did not clearly err by assessing 25 points for OV 19.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford