*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARON DEWAYNE WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2024

No. 363871
Wayne Circuit Court
LC No. 21-001934-01-FC

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO*, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree premeditated murder, MCL 750.316(1)(a),[1] being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(a). We affirm.

## I. BACKGROUND

This case arises from the shooting death of Dalonte Hall in a gas station parking lot on March 13, 2020. According to witnesses present at the shooting, Hall was in the parking lot of the gas station talking to Demether Simmons shortly before he was shot. Taylor Delisle was sitting in a car in the parking lot when she heard shots ring out after seeing two men get into a physical altercation. Neither Simmons nor Delisle were able to identify defendant as the shooter in court or in photo lineups following the shooting.

Surveillance video from the gas station, which was played for the jury during trial, showed Hall in a physical altercation with another individual before the shooting. The video showed Hall force the other individual to the ground and punch him repeatedly in the face. When the other individual managed to get up, Hall grabbed him from behind and tried to force him back to the ground. While Hall was grappling the individual from behind, the individual was able to grab a

---

[1] Defendant was originally charged with open murder, MCL 750.316.

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

gun from his pocket. After Hall unsuccessfully tried to throw the individual back to the ground, the individual turned around and shot at Hall. Hall tried to run away, but the individual followed, continuing to shoot. The video shows Hall eventually falling to the ground, lying face down, motionless. The individual then walked over and shot Hall several more times.

A blood sample was collected from a blood stain found on the parking lot where the individual Hall was fighting fell to the ground and was punched repeatedly. A DNA analysis of this sample established that defendant was a contributor. Defendant's DNA was also found in blood on Hall's left hand.

Following closing arguments and jury instructions, the jury convicted defendant as set forth previously. Defendant now appeals as of right.

## II. MISSING-WITNESS INSTRUCTION

Defendant first challenges the trial court's ruling declining to give a missing-witness instruction after it was determined that Officer Patrick Taylor of the Detroit Police Department was not available to testify. We disagree.

### A. STANDARD OF REVIEW

The trial court's decision whether to give the jury a missing-witness instruction is reviewed for an abuse of discretion. *People v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 359376); slip op at 11. A trial court abuses its discretion if it makes an error of law, relies on an incorrect legal framework, or its decision falls outside the range of reasonable and principled outcomes. *Id*. at ___; slip op at 11.

### B. ANALYSIS

The prosecution's obligation to produce witnesses it has endorsed stems from its statutory responsibility set forth in MCL 767.40a, which provides in pertinent part:

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

Simply forgetting to subpoena a witness or to contact a witness will not reach the threshold of "good cause" under MCL 767.40a(4), *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014), but being unable to locate an endorsed witness after exercising due diligence will, *People v Canales*, 243 Mich App 571, 577; 624 NW2d 439 (2000). If a trial court determines that the prosecution failed to produce a witness on its witness list without satisfying MCL 767.64a(4)'s requirements, the court has the discretion to tailor an appropriate remedy for the statutory violation,

which could include issuing a missing-witness instruction. *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

The jury instruction that defendant sought to have provided was M Crim JI 5.12, which states: "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." "[I]n every instance, the propriety of reading [M Crim JI 5.12[2]] will depend on the specific facts of that case." *Perez*, 469 Mich at 420-421.

The prosecution originally listed Officer Taylor as a witness but moved to strike him "for good cause" after it issued him a subpoena and discovered that he no longer worked for the Detroit Police Department and was out of state. The prosecution contended that Officer Taylor was not going to offer any testimony adverse to the prosecution, that he provided security at the scene of the shooting, and that his testimony would be cumulative to that offered by other officers. Defense counsel disagreed that Officer Taylor's testimony would be cumulative to that of other officers; he contended that Officer Taylor would testify that he spoke to two individuals following the shooting, one of whom identified Hall as the victim, and another who thought that the victim was someone else. Defense counsel accordingly requested the missing-witness instruction.

After hearing these arguments, the court ruled that it would allow the prosecution to remove Officer Taylor from the witness list and would not provide a missing-witness instruction. The court recited caselaw addressing the missing-witness instruction, and explained that it was not going to give the instruction for Officer Taylor because (1) his testimony would not be helpful to defendant and (2) Officer Taylor had left the Detroit Police Department and was out of state. On the first point, the court elaborated that Officer Taylor's testimony would be cumulative to evidence already introduced at trial, and to any extent that his testimony would relate to Hall's identity as the victim, that issue was not disputed.

The trial court did not abuse its discretion in denying defendant's request for a missing-witness instruction. The court's ruling reflects that it considered how the prosecution was not alerted to any issue with Officer Taylor's appearance until after trial commenced and the prosecution was informed that Officer Taylor had left the police department and was out of state. While the trial court's ruling focused largely on the substance of Officer Taylor's proposed testimony, it clearly referenced the obstacles that the prosecution encountered in its effort to secure Officer Taylor's attendance at trial. In light of the record made by the prosecution in support of its request to remove Officer Taylor from its witness list "for good cause" and the trial court's decision to grant the prosecution's request, it is evident that the court determined that the prosecution was not able to produce Officer Taylor after exercising due diligence to secure his appearance at trial. *Canales*, 243 Mich App at 577; *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017). On such facts, the trial court's decision to not give a missing-witness instruction was not an abuse of discretion. See *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004).

---

[2] CJI2d 5.12 was the predecessor to M Crim JI 5.12.

Even assuming that defendant is correct and the trial court should have given the missing-witness instruction, its refusal to do so constitutes reversible error only if "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Cornell*, 466 Mich 335, 364; 646 NW2d 127 (2002) (quotation marks and citation omitted). The central issue at trial was the identity of the shooter, and the prosecution admitted DNA evidence establishing beyond a reasonable doubt that defendant was the shooter. DNA analysis showed that that the DNA profile obtained from Hall's hand swab was "at least 210 sextillion times more likely" to have originated from Hall, defendant, and one unknown contributor than if it had originated from Hall and two unknown contributors. Michigan State Police forensic scientist Jennifer Dillon testified that "this analysis provides very strong support that [defendant] is a contributor to the hand swab" from Hall. Similarly, Dillon testified regarding the parking-lot stain, explaining that the DNA analysis revealed that it was at least 13 septillion times more likely that the sample originated from defendant and one unknown contributor than if it had originated from two unknown contributors. Surveillance video showed a physical fight between Hall and an unidentified individual before the shooting in which Hall took the unidentified individual to the ground and punched him repeatedly. The jury could have reasonably inferred that the video showed defendant and Hall fighting given that defendant's DNA was found on Hall's hand and on the ground where the unidentified individual was punched by Hall. The video showed this individual shoot Hall repeatedly, including shooting Hall while he was lying on the ground, motionless. In light of the other properly admitted evidence at trial, it does not affirmatively appear to us more probable than not that a different outcome would have resulted at defendant's trial without the error alleged by defendant.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecution did not present sufficient evidence from which the jury could find that the element of identification was proven beyond a reasonable doubt. We disagree.

## A. STANDARD OF REVIEW

In *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018), our Supreme Court explained the standard for reviewing a claim challenging the sufficiency of the evidence as follows:

> "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). But more importantly, "[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted; emphasis added). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn

from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (emphasis added).

## B. ANALYSIS

Defendant challenges the sufficiency of the evidence with respect to all of his convictions, but focuses his arguments on the element of identification. Identity is an essential element in every criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). Defendant is correct that both eyewitnesses to the shooting, Delisle and Simmons, were unable to identify defendant at trial or in a photo lineup days after the shooting. Nevertheless, the prosecution presented ample evidence from which the jury could find beyond a reasonable doubt that defendant was the individual who shot Hall. Dillon, addressing the swab collected from Hall's hand, explained that DNA testing results showed that it was "at least 210 sextillion times more likely" that the DNA profile originated from Hall, defendant, and one unknown contributor than if it had originated from Hall and two unknown contributors. Accordingly, the DNA analysis performed on the swab taken from Hall's hand yielded "very strong support" that defendant contributed to Hall's hand swab. Dillon also confirmed that DNA testing on the parking-lot stain, which originated from two individuals, revealed that it was at least 13 septillion times more likely that the sample originated from defendant and one unknown contributor than if it had originated from two unknown contributors. From this DNA evidence found on Hall's hand and the blood stain on the parking lot, the jury could draw the reasonable inferences that it was defendant (1) seen fighting with Hall on the surveillance video and in the still photographs taken from the surveillance video, and (2) who returned to shoot Hall following the physical altercation. *Oros*, 502 Mich at 240.[3]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant argues that he was denied the effective assistance of counsel because his trial counsel did not object to certain evidence admitted at trial. We disagree.

## A. PRESERVATION OF ISSUE AND STANDARD OF REVIEW

Because defendant did not request a *Ginther*[4] hearing, his claim of ineffective assistance of counsel is not preserved for review. *People v Ogilvie*, 341 Mich App 28, 33-34; 989 NW2d

---

[3] On appeal, defendant argues that the blood sample collected from Hall's hand could not have been the sample that was tested because of discrepancies between the time that the evidence was entered in the Detroit Police Department's Electronic Tracking System and the time that the evidence technician said he collected the blood sample from Hall's hand. Defendant's suggestion that this discrepancy necessarily means that the blood sample tested was not the blood sample collected is conclusory and does not find support in the record. This discrepancy was, moreover, highlighted for jurors, who apparently credited the DNA evidence despite the discrepancy.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

250 (2022). Unpreserved allegations of ineffective assistance of counsel are reviewed for errors apparent from the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

## B. ANALYSIS

In *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), our Supreme Court explained that to establish ineffective assistance of counsel, a defendant must be able to demonstrate that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced as a result. In the context of an ineffective assistance claim, prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. This Court presumes the effective assistance of counsel, and the defendant bears the burden of establishing otherwise. *People v Traver*, 328 Mich App 418, 422; 937 NW2d 398 (2019). This Court will not second-guess trial counsel's decisions on matters of trial strategy or assess counsel's competence with the benefit of hindsight. *Id*. at 422-423.

The thrust of defendant's argument is that the prosecution's Exhibits 71 and 72 were improperly admitted into evidence. Prosecution Exhibit 71 consisted of the blood sample collected from the gas station parking lot, and prosecution Exhibit 72 was the blood sample taken from Hall's hand. Defendant contends this evidence was "tainted." While not expounding on his argument in detail, defendant refers to the fact that the blood evidence was obtained after the scene of the shooting was left unattended for a period of time, which defendant characterizes as a "complete disregard" of protocol for the collection of evidence.

A review of the record reveals that the police had a legitimate and justifiable explanation for the delay in collecting the blood evidence at the scene of the shooting. Sergeant Erik Peterson testified that he initially believed that the blood spatter he saw at the scene of the shooting belonged to Hall, and it was only after he viewed the surveillance video two hours later that he determined that the blood spatter could have come from the shooter. The evidence technician was consequently directed back to the scene of the shooting, which was no longer secured. Nothing about this sequence of events suggests a "disregard" of protocol, as defendant contends. And given that no protocols were breached in the collection of evidence, any objection to its admission would not have been successful. Trial counsel cannot be found ineffective for failing to raise a meritless objection. *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

## V. ADMISSION OF DEFENDANT'S MUG SHOT AND CLAIM OF PROSECUTORIAL MISCONDUCT

Defendant next argues in his Standard 4 brief that the trial court abused its discretion by admitting defendant's October 2020 mug shot. Defendant also raises a claim of prosecutorial misconduct with respect to the prosecution's questioning of Corporal Raymond Diaz about his reason for not securing Hall's shirt as part of the investigation.

### A. DEFENDANT'S MUG SHOT

This Court reviews preserved evidentiary challenges for an abuse of discretion. *People v Parrott*, 335 Mich App 648, 678; 968 NW2d 548 (2021). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 NW2d 385 (2007).

Before defendant's mug shot was admitted, the trial court performed a balancing test under MRE 403 and determined that the evidence was not barred under that rule. The thrust of defendant's appellate challenge is that the trial court abused its discretion by ruling that defendant's mug shot was not excluded under MRE 403, which, at the time of trial, provided:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[5]

Unfair prejudice as contemplated by MRE 403 will occur when a danger exists that the jury will give evidence that is only marginally probative undue or preemptive weight. *People v Beck*, 510 Mich 1, 20-21; 987 NW2d 1 (2022). The trial court is in the best position to determine whether evidence should be excluded under MRE 403 because of its unique ability to contemporaneously assess the presentation, credibility, and effect of testimony. *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010).

The trial court did not abuse its discretion by admitting the mug shot after conducting the balancing test under MRE 403. As an initial matter, defendant's mug-shot photograph was undoubtedly relevant to the issue of identification, the key disputed issue at trial, because it tended to make the issue of defendant's identity, which was a fact of consequence at trial, more probable than it would be without the mug-shot evidence. MRE 401. The trial court recognized the key relevance of the mug-shot evidence given that defendant's identity was hotly contested, presumably because defendant's physical appearance had changed from October 2020 (when he was first arrested) to September 2022 (when he was tried for Hall's shooting). The trial court also noted that the jury had already heard testimony regarding the circumstances of defendant's October 2020 arrest, as well as defendant's subsequent arrest in February 2021. In a clear effort to alleviate potential prejudice to defendant and avoid confusing the jury, the trial court directed that the portion of the photograph labeled "mug shot" be excised. The court also rejected the prosecution's attempt to introduce an additional mug shot, limiting its ruling to the mug shot that was taken closer in time to when defendant was arrested and showing his side profile. Under these circumstances, we are satisfied that the probative value of the evidence in assisting the jury in determining the necessary element of identification for all of the charged crimes was not outweighed by the danger of (1) any unfair prejudice to defendant, (2) confusing the issues, or (3) misleading the jury. MRE 403. Accordingly, defendant's contention that the trial court abused its discretion in admitting his mug shot photograph is without merit.

---

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023).

## B.  PROSECUTORIAL MISCONDUCT

Defendant lastly contends that the prosecution "unequivocally communicated on [sic] evidence outside the record" when it asked Corporal Diaz why the police did not collect Hall's shirt, and Corporal Diaz responded that securing the shirt was not possible because it was soaked with blood.  We disagree.

Defendant did not raise a contemporaneous objection to the prosecution's challenged line of questioning of Corporal Diaz, so his claim of prosecutorial misconduct is not preserved.  *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020).  This Court reviews unpreserved issues of prosecutorial misconduct for plain error affecting substantial rights.  *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

It is well settled that the prosecution is not permitted to make statements of fact to the jury that are not supported by the evidence, but it is permitted to argue reasonable inferences arising from the evidence as they relate to the prosecution's theory of the case.  *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014).  In the present case, the prosecution was not making statements of fact to the jury that were unsupported by the evidence.  Instead, the prosecution's question to Corporal Diaz was factually based, as confirmed by Corporal Diaz, who explained that Hall's shirt was not collected because it was soaked with blood.  This exchange closely followed Corporal Diaz explaining to the jury that the police do not collect blood-soaked items because they do not have an appropriate location to place them to dry.  Accordingly, defendant has not demonstrated plain error with regard to his assertion that the prosecution made a statement of fact to the jury that was unsupported by the evidence.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro